**RUPARD et al. v. REES.**

No. 11958—Opinion Filed Oct. 9, 1923.

Rehearing Denied Dec. 4, 1923.

1. **Mortgages—Bills and Notes—Right of Action—Prematurity.**

Where a plaintiff sues defendants upon several notes, one of which has matured and payment therefor has been legally tendered by defendants, and the other notes have not matured, all of which are secured by a real estate mortgage, which is sought to be foreclosed for failure to pay a debt not secured by the mortgage and not part of the mortgage indebtedness, and seeks to declare the whole indebtedness due and to accelerate the payments on all of the notes for this reason, held, he cannot recover upon the indebtedness not due and cannot have judgment for foreclosure of the mortgage.

2. **Tender—Waiver.**

Where a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer, if made, would have been refused.

3. **Payment—Tender of Check—Waiver of Cash.**

Failure to make objection to a check as tender at the time of payment is a waiver of the right to demand payment in money.

4. **Judgment not Sustained.**

The judgment of the court in this case upon an examination of the record, is held to be contrary to law and clearly against the weight of the evidence.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Washington County; Preston A. Shinn, Judge.

Action by L. J. Rees against Albert S. Rupard, Belle Fender, Harve Fender, B. L. Cutler and Lucy E. Jack. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions.

Campbell & Ray, for plaintiffs in error.

H. H. Montgomery and S. J. Montgomery, for defendant in error.

Opinion by THOMPSON, C. Plaintiff, L. J Rees, on April 23. 1920, by filing his petition, sues defendant Albert S. Rupard upon an oral contract, made and entered into on or about the 1st day of September, 1919, where he claimed that Albert S. Rupard agreed to purchase, and he agreed to sell, hotel property and the lots upon which it is located, described as the south 25 feet of the north half and the north 25 feet of the south half, all on lot 2, in block 27, in the city of Bartlesville, Okla., together with all buildings and improvements thereon, for which the defendant Albert S. Rupard agreed to pay plaintiff the sum of $28,000, as follows: $8,000 in cash as a down payment, and the remaining $20,000 to be evidenced by 14 promissory notes, 13 of which were for $750 each, the first one coming due on the 1st day of March, 1920, and each of the others, for a like sum, coming due every six months thereafter, and the last note being for $10,250, coming due seven years from the 1st day of September, 1919, all of said notes bearing interest from date at the rate of six per cent. per annum, payable semi-annually, all of the 14 notes to be secured by a real estate mortgage upon the property conveyed.

For the plaintiff's first cause of action he alleges that, at the time of making of the contract, the defendant Albert S. Rupard paid him $500 in cash and gave him his personal check for $7,500 as a balance of the $8,000 down payment, and that he executed the notes and mortgage for the $20,000, as above set forth; that defendant's check for $7,500 was dishonored at the bank and he had to pay $2.50 protest fees, and that thereafter defendant Rupard made certain payments upon the $8,000 cash payment, agreed upon, as follows: September 15, 1919, $500; September 20, 1919, $1,000; September 29, 1919, $1,000; October 11, 1919, $1,000; November 15, 1919, $1,000; December 4, 1919, $500; making a total sum of $5,500 paid of the $8,000 indebtedness; and, that defendant Albert S. Rupard has failed and refused to pay the remaining $2,500 on the down payment, the interest thereon, or the $2.50 protest fees, and that said defendant is justly indebted to plaintiff in the sum of $2,564.25, principal, interest, and protest fees.

In plaintiff's second cause of action he alleges that the first note of $750 was due March 1, 1920, and the semiannual interest on the entire $20,000 indebtedness was also due on the 1st day of March, 1920, and that the said defendant had failed to pay said last-mentioned note and interest, as above set forth on the date due.

In the other 13 causes of action, suit is brought on each of the notes, executed by this defendant to plaintiff, for the principal of said notes and interest in the total sum, on all the indebtedness, of $25,375, with interest thereon at six per cent. per annum from date until paid.

Plaintiff further alleges that the terms of the mortgage provided, upon failure to pay the notes and interest at the time they fell due, or any part thereof, or upon failure to keep the building insured, taxes paid, or to keep it in good state of repair, that at his option he could declare the whole indebtedness due and foreclose the mortgage for the

payment of the entire debt, and that because of the fact that defendant had not paid the balance of the down payment, and had not paid the first note of $750 and all the interest due on the entire debt on the 1st day of March, 1920, and had failed to keep the building repaired, the entire debt was due him and he was exercising his option to declare the entire debt due and payable at the time of the bringing of this action; that the defendants, Harve Fender, Belle Fender, B. L. Cutler, and Lucy E. Jack, claimed some right, title, claim, or interest in the mortgaged property in this action, and prayed for judgment against the defendant for the amount of the debt of $25,375, $2,100 attorney fees, and asked for the appointment of a receiver, foreclosure of the mortgage, and sale of the property. Copies of all the notes and mortgage are attached to the petition as exhibits and made a part thereof.

Albert S. Rupard for his separate answer admits that on the 1st day of September, 1919, he became indebted to the plaintiff in the sum of $28,000, and that he failed to make the entire $8,000 payment in cash, and that he paid $500 at the time of the contract and made the subsequent payments, as alleged in plaintiff's petition; that there was still due and payable to plaintiff the sum of $2,500 and interest, together with the $2.50 protest fees, but that before the bringing of this action he deposited in the First National Bank of Bartlesville, Okla., money sufficient to pay this indebtedness, and that the Bank of Bartlesville notified plaintiff that the money was there for the purpose of discharging his indebtedness on the balance of the $8,000 payment, and the plaintiff was so notified by the bank and asked that plaintiff furnish statement of the amount due; that he had offered to pay the plaintiff the amount due on the down payment and was still willing, ready, and anxious to pay, and make tender in court of said amount sued for in said first cause of action and offered to pay all costs that may be adjudged against him on account of first cause of action; that, on or about the 1st day of September, 1919, at the time of payment of $500 cash and the delivery of his check for $7,500, he went into possession of the property, but that plaintiff failed to deliver sufficient warranty deed to him, and has never offered or tendered to plaintiff the deed to the property, and denied the right of plaintiff to maintain the suit until an offer or tender had been made to this defendant, and prayed the court to be permitted to pay the clerk, for the use and benefit of plaintiff, the amount due plaintiff upon the first cause of action sued upon and all lawful and legitimate costs of suit up to the date of filing answer,

and that the suit be dismissed as to the first cause of action after said payment.

In answer to the second cause of action defendant admitted the execution of the notes and mortgage sued upon in the causes of action from two to fifteen, inclusive, but denied that the covenants of the mortgage had been broken at the time of the institution of the suit. That before the institution of the suit, with full knowledge of the plaintiff, he sold and conveyed the real estate mortgaged to his codefendants, Belle Fender and Harve Fender, who assumed the payment of the promissory notes sued on as they became due, and agreed to fully satisfy the mortgage indebtedness, and that his codefendants, Belle Fender and Harve Fender, sent by mail to plaintiff checks drawn by them on the First National Bank of Bartlesville, Okla., for the full amount of the money, which became due to said plaintiff on the promissory note, mentioned in the second cause of action in plaintiff's petition, on the 1st day of March, 1920, and also sent their check at the same time for the full amount of interest, which became due on all the notes on the said first day of March, 1920, and that said plaintiff refused to accept payment of said note and the interest on said notes becoming due on said 1st day of March, 1920, for the sole and only reason that this answering defendant was then indebted to him upon the claim and cause of action set forth and sued upon in the first cause of action set forth in the petition, the same being the balance of the down payment of $2,500 then due, and that afterwards, before bringing this suit, his codefendants, Belle Fender and Harve Fender, offered to pay the plaintiff the entire amount due upon the said promissory note which became due on the 1st day of March, 1920, together with all interest which became due on said day and date upon all of the said promissory notes; that said plaintiff refused at all times to accept any monies upon said note and interest, which fell due on the 1st day of March, 1920, until this defendant, Albert S. Rupard, should pay and fully satisfy the indebtedness sued upon in the first cause of action; that his codefendants, Belle Fender and Harve Fender, have been, at all times since the 1st day of March, 1920, able, ready, and willing to pay said note and the interest on all the other notes, due on said day, and now offer to pay said amount into court for said plaintiff for his use and benefit, and that they have offered to pay the attorneys for said plaintiff said amount before the institution of this action.

This defendant further denies that the plaintiff is in danger of losing his security for said indebtedness, or that said property

is not kept in good repair, but says that said. property is reasonably worth $40,000, and that the same is ample security for the payment of the mortgage indebtedness, which amounts to about $20,000. The answer further alleges that the plaintiff failed, neglected, and refused to deliver the deed to the premises to him, so that the same could be placed of record, notwithstanding the fact that he has and holds a first lien upon the real estate aforesaid; that his codefendants, Harve Fender and Belle Fender, are the owners of the real estate involved in this action, subject to the first mortgage held by plaintiff and a second mortgage held by this defendant for $13,000, being part of the purchase price agreed to be paid him by his codefendants; that his codefendants, B. L. Cutler and Lucy E. Jack, hold a lease upon the said real estate and the buildings and improvements thereon, made and executed to them by Harve Fender and Belle Fender.

The answer closes with a prayer that upon the payment by this answering defendant of the balance due of the $8,000 down payment and the interest thereon and costs, as asked by plaintiff in the first cause of action, and by his codefendants, Belle Fender and Harve Fender, to plaintiff of the amount due on the promissory note sued on in the second cause of action, which became due on the 1st day of March, 1920, and all the interest, which became due on all the said promissory notes on the said 1st day of March, 1920, that the action be dismissed, and that plaintiff be ordered and directed by the court to deliver to this answering defendant a good and sufficient deed of conveyance to him, and that the court order and adjudge herein that this action was prematurely brought upon all of said promissory notes for the foreclosure of said mortgage. as none of said promissory notes sued upon herein, except the note, which became due on the said 1st day of March, 1920, and the interest on all of the notes up to the 1st day of March, 1920, are at this time due and payable.

The defendants, Harve Fender, Belle Fender, B. L. Cutler and Lucy E. Jack, filed their separate answer. by which they adopt the separate answer of Albert S. Rupard, including the prayer in said answer, and asked that their rights be disposed of in the way and manner prayed for in the answer of said Albert S. Rupard.

Plaintiff filed reply to the answer of Albert S. Rupard, denying all allegations contained in the answer contradictory of and inconsistent with plaintiff's petition.

Plaintiff filed further reply to the separate answer of defendants Belle Fender,

Harve Fender, B. L. Cutler, and Lucy E. Jack, alleging that their answer did not constitute a defense to plaintiff's petition, and was insufficient in law, both in substance and in form, to constitute a defense to plaintiff's petition, and denying all the material allegations in said separate answer contained, contradictory and inconsistent with plaintiff's petition.

Upon these issues the case came on for trial on the 20th day of October, 1920, before the court and without the intervention of a jury, and after the taking of testimony, the court, on the 30th day of October, 1920, pronounced judgment in favor of the plaintiff and against the defendant on all the issues involved in this action; that all the allegations of plaintiff's petition are true and that plaintiff is entitled to recover judgment against defendants, as prayed for in his. petition, upon each count and cause of action set out in said petition; that plaintiff should recover on his first cause of action against the defendant, Albert S. Rupard, the sum of $2,717, principal and interest; that the deed executed by plaintiff to the defendant Albert S. Rupard on the 1st day of September, 1919, should be delivered to him upon his payment of the $2.717 and costs, which deed should relate back to the 1st day of September, 1919, and that the delivery of said deed should, in no wise, affect the issues involved in this suit or the plaintiff's mortgage and notes set out in his petition. nor the foreclosure of said mortgage, and the court pronounced judgment against the defendant Albert S. Rupard on each of the other causes of action, which amounted to the total sum of $21,406.67, with interest thereon at the rate of six per cent. from the 3rd day of November, 1919, until paid, and the sum of $2,100 attorney fees, and that all the indebtedness was due and payable at the time of bringing this action; that the condition of said mortgage had been broken, as alleged in plaintiff's petition, and that plaintiff was entitled to a foreclosure thereof, as a first lien upon the property described in said mortgage, and that the property should be sold, as provided by law, for the payment of the indebtedness after the expiration of six months from the date of the judgment, and the proceeds distributed, and that defendants pay the costs, to all of which the defendants excepted and filed their motion for new trial, which motion was by the court overruled and the cause comes regularly on appeal, by the defendants, to this court for review.

The testimony of plaintiff as to the contract, the amount to be paid and the notes and mortgage for the deferred payment, and the failure to pay all of. the down payment

and as to the partial payments made is in conformity with the petition and admissions in defendant's answer. He testified that he received a letter on March 4, 1920, which is as follows:

"Bartlesville, Oklahoma, 3-1-20.
"Mr. J. L. Reese,
"Dear Sir:

"Enclosed please find checks as follows: One check for note of $750.00, one check for $600.00 to cover interest up to date. Asking you very kindly to please mail me my notes at once.

"Yours very truly,
"Harve Fender,
"care of Park Hotel."

And that, on the same day and date, he replied to the letter, set out above, by the following letter:

"L. J. Rees, President,
"Wm. McCall, Vice President,
P. P. Maxwell, Cashier,
"W. L. Lineback. Asst. Cash.
"State Bank
"Capital $25,000.00
"Siloam Springs, Ark.

"March 4, 1920.
"Mr. Harve Fender,
"Bartlesville, Okla.

"Dear Sir:

"We have yours of the 1st inst. enclosing your checks for $600.00 and $750.00 in payment of the note due and the interest due on the A. S. Rupard note. We beg to say that we cannot accept this payment as Mr. Rupard has never paid me all of the first payment that was due me. The deed has never been delivered to him.

"There is due me on the first payment that was to be made $2611.18 and if you will send that amount in addition to the $1350.00, making in all due March 1st $3961.18 we will forward your cancelled note and deliver the deed for record. Unless we receive this by return mail we will have to proceed to file suit.

"We wrote Mr. Rupard Feb. 27 giving him a statement of the full amount due in which we advised him that payment must be made at once.

"Do not send personal checks, send a bank draft, also send your payment to the State Bank, Siloam Springs, where the notes are payable and they will send you the canceled note and a receipt for the interest and the deed.

"You will find your checks herewith. Please do not delay this as I do not want to bring suit but will be forced to do so unless action is taken on this by you at once.

"Yours very truly,
"L. J. Rees."

He further testified that he had no notice that the balance of the $8,000 down payment was ready to be paid before the bringing of this action; that the building had not been kept in repair and upon the question of the building being kept in repair plaintiff introduced witness Mrs. B. K. Reeves, who testified that she was the tenant of the hotel property, under contract with the plaintiff; that some of the waste pipes had bursted and some of the plastering had come off and some of the lavatories were out of fix, and on cross-examination she admitted that some of these conditions existed before the contract was made between the parties to this action, and that the defendants, Albert S. Rupard and Harve Fender, had repaired every defect that she had called their attention to and had sent workmen to make the repairs every time she had asked them; that the city sanitary officer had gone through the building and had suggested repairs and changes, all of which had been made.

After introducing letters and telegrams from the defendant Albert S. Rupard, giving his reasons for the delay in the payment of the $8,000, and all the notes and mortgage sued on, plaintiff rested.

The defendants then introduced witness D. F. Redding, who testified that Albert S. Rupard employed him to repair the buildings in September, 1919; that he made an inspection of the entire building and the matters and things complained of about leaks and other things, and that he repaired all the defects that existed at that time; that he painted the north wall and puttied all the holes in the brick walls and left the building in a good state of repair, and the testimony of several other workmen, consisting of plumbers, painters, and carpenters, was introduced, who all testified that they had made repairs on the building and some of them testified that it was in better condition than it was at the time it was turned over to Rupard. Five real estate men, who were engaged in the real estate business in Bartlesville, testified that the property was worth from $40,000 to $45,000; some of them testified that it was in a good state of repair and in better condition than it was on the 1st day of September, 1919, the date of this contract.

F. W. Knisley, sanitary inspector of the city of Bartlesville, testified that he inspected the building and ordered the repairs made, which the other witness testified that they did make, and that when such repairs were made he considered the building in first class condition.

Harve Fender, one of the defendants, testified that he mailed the two checks enclosed in the letter, heretofore referred to

to L. J. Rees and received the reply from the said L. J. Rees, and that he called the plaintiff, L. J. Rees, over the telephone on the 1st or 2nd of April, 1920, and had a conversation with him about the payment of the first note to fall due under the mortgage and the interest on the other notes and asked him if he should return his payments and L. J. Rees told him not to do so until after Rupard settled up. He also testified to a letter, which was introduced in evidence, dated March 30, 1920, from L. J. Rees to him. in which he demanded an immediate settlement of $2,626.75, balance due from Rupard to him on the down payment and also a statement as to the amount of the principal and interest due on the first note and the interest due on all the notes down to that date. There was also introduced a copy of a cashier's check for $1,350, payable to the order of plaintiff, being the aggregate amount of the $750, the first mortgage note, and $600, the amount of interest due on the $20,000 mortgage on March 1, 1920, and witness A. H. Boles, cashier of the First National Bank of Bartlesville, Okla., testified that he had the cashier's check, mentioned in the testimony of Rupart, at the time he telegraphed the plaintiff, on the 22nd day of April, 1920, notifying him that he had funds in the bank to take up all the indebtedness, being the balance of the down payment and the first note and the interest on all the notes, in his hands, and to send the papers at once, stating the amount due: receiving no reply, on April 23rd he sent another telegram to plaintiff, asking for the amount due on the debt, first note and interest, and that on receiving no reply he called plaintiff over the telephone. on the 24th or 25th day of April, and plaintiff admitted that he had received the telegrams: that there was the sum of $5,250 deposited in his bank by Rupard and Harve Fender for the purpose of using whatever was necessary to pay the balance due on the first payment and the first note and interest at the time he sent the two telegrams and had the telephone conversation with plaintiff, and that said amount was still in his bank for the purpose of being used to pay off these amounts.

The witness Tom George testified that he, as attorney for the defendants, Albert S. Rupard and the Fenders. had the witness Boles send these messages offering payment, and that he deposited with the bank the amount of $1,250 for the Fenders and $3.900 for the defendant Albert S. Rupard, making a total of $5,250 to be used for the purpose of paying all the amounts due the plaintiff.

That, in substance, is all the material testimony in this case.

The attorneys for defendants set out in their brief 17 specifications of error, but choose to present and argue them under four headings, which are as follows:

"First: Was it necessary for the grantor to tender a deed of conveyance of the property and· make a demand of payment of the balance of the down payment of the purchase price before suing for such balance; and could the mortgagee who is the grantor, demand the payment of the balance due on the down payment of the purchase price of the property, before being legally bound to accept payment of the first note and interest falling due March 1, 1920?

"Second: Was a sufficient tender of payment made to the mortgagee of the first note and the interest falling due March 1, 1920, and was the tender made before the mortgagee had· exercised his option to declare the whole debt due, secured by the mortgage?

"Third: Could the option in the mortgage to declare all the indebtedness due upon failure to make the payments at the very times provided in the notes, in the absence of a provision making time the essence of the contract, be exercised after tender of the amounts due, and without notice of such intention?

"Fourth: Was it proven at the trial that the defendants below had not kept the premises in good repair within the meaning of the provisions of mortgage?"

The parties, since the trial of the cause and the rendition of the judgment in the trial court and since this appeal was filed. on June 18, 1923, by stipulation filed in this court, signed by counsel for their respective clients, say that on the 20th day of November, 1920, the defendants paid to plaintiff the full amount sued for in the first cause of action and fully satisfied the judgment rendered in the district court in favor of the plaintiff on said first cause of action, and that plaintiff had delivered his deed and conveyance of the property involved in this action to the defendant, Albert S. Rupard, and the same had been recorded in the office of the county clerk of Washington county, Okla., which stipulation eliminates the first cause of action as to the delivery of the deed and the payment of the balance due on the $8,000 down cash payment.

On the first proposition presented in the brief of counsel for defendant, in view of the settlement of the first cause of action. since the rendition of the judgment and the delivery of the deed to the defendant Albert S. Rupard, by plaintiff, and in view of the

finding of the court in its judgment that the delivery of the deed should, in no wise, affect the issues involved in this suit or the plaintiff's mortgage and notes set out in the petition, nor the foreclosure of said mortgage, we do not think it necessary to pass upon this question, other than upon the proposition as to whether the failure to make the payment, by Albert S. Rupard, of the entire amount of the down payment, entitled plaintiff to accelerate the payments of the promissory notes not due, executed for the $20,000 on the purchase price, and to have his mortgage foreclosed for the nonpayment of the said balance due on the said $8,000 and to insist on the payment of the balance before he would accept payment upon the first note falling due and the interest on all of the other notes. It is our opinion that this contract is a separable contract and that the terms of the mortgage do not, in any way, entitle the plaintiff to insist upon the payment of the balance of the down payment before he should receive and accept the payment upon the note for which the mortgage was given as security The mortgage, by its plain terms, was given to secure the payment of 14 notes, due and payable at different times, the total of said notes aggregating $20,000, and by its plain provisions authorizes the mortgagee to foreclose said mortgage only upon failure to pay the notes designated at the time they became due, and the interest on all of said $20,000, as it fell due semi-annually, and upon the mortgagor failing to keep the building insured, taxes paid, or to keep it in good state of repair, and it is our opinion that the plaintiff had no right to demand, as a condition precedent, the payment of the $2,500 and protest fees before he would accept the payment of the note falling due March 1, 1920, and the interest on the entire indebtedness, which was offered to be paid by the defendant Harve Fender, by sending his checks to plaintiff, dated March 1, 1920, for the full amount of the principal on said note and the full amount of the accrued interest upon all the mortgage indebtedness. And this being the sole and only reason assigned by plaintiff for refusing to accept said payment in his letter to Harve Fender, of March 4, 1920, over his own signature, we are compelled to determine that under such state of facts under the conditions shown by the record in this case, the plaintiff could not accelerate the payments of the other notes not yet due and proceed from this cause only to institute proceedings for the payment of the entire indebtedness and the foreclosure of the mortgage given to secure the same. To hold otherwise would be to do violence to the rules of construction of written contracts, and we would be compelled to read into the conditions of the real estate mortgage that the same was given to secure the payment of an indebtedness not mentioned in the mortgage, and to declare a breach of the conditions in the mortgage, not authorized by the terms thereof. No matter how much criticism there might be of the acts of Albert S. Rupard for allowing his check to go to protest, or for failure to pay the entire amount of the $8,000, these matters cannot be made a part and parcel of the terms of a written contract, in which the same is not provided for, or mentioned, in its terms. The plaintiff has chosen to sue upon his oral contract and his notes and mortgage, and is seeking to recover the full purchase price thereof and is not undertaking to rescind the contract and recover the property back, and his rights must stand or fall upon the oral agreements and upon the notes and mortgage, as written, and we are therefore of the opinion that the plaintiff had no legal right to demand the payment of the balance due on the down payment of the purchase price of the property before he was legally bound to accept payment of the first note and all the interest falling due March 1, 1920, and we do not deem it necessary, in view of our opinion herein expressed, to pass upon the question as to whether it was necessary for the plaintiff to tender the deed of conveyance before making demand for the payment of the balance of the down payment of the purchase price, as said balance has been paid and the deed delivered and accepted, as asked for in defendants' answer and provided for in the judgment in this cause.

Upon the second proposition, the record shows that the defendant Harve Fender mailed two checks to the plaintiff, which plaintiff admits he received on the 4th day of March, 1920, said checks being in the full amounts due on the note falling due on the 1st day of March, 1920, and the interest on all of the $20,000 indebtedness, and it will be observed that the letter accompanying such remittance does not mention the name of Albert S. Rupard, but simply says that Harve Fender encloses one check for note of $750 and one check for $600 to cover interest up to date and asked him to "Please mail me my notes at once," signed. "Harve Fender." This letter, plaintiff says, he received on the 4th day of March, 1920, and on the same day and date plaintiff replied, acknowledging receipt of the two checks for the amounts mentioned, "In payment of the note due and the interest due on the A. S. Rupard note. We beg to say that we can not accept this payment as Mr.

Rupard has never paid me all of the first payment that was due me." And, in this letter, he further says, "There is due me on the first payment that was to be made $2,-611.18 and if you will send that amount in addition to the $1,350, making in all due March 1st $3,961.18 we will forward your canceled note and deliver the deed for record." Nowhere does the plaintiff object to the manner of this payment on account of it having been made by check, but bases it solely and only upon the proposition that Rupard had never paid him all of the first payment that was due, nor does he make any objection to the payment being made by the defendant Harve Fender, instead of Albert S. Rupard, but does say that if Harve Fender would send the additional amount by bank draft that he would accept the same, cancel the note and deliver the deed.

It will further be observed that the plaintiff knew what the checks, sent to him by Harve Fender, were for, and the contention that the plaintiff did not know that Harve Fender was interested in the property, or that the plaintiff did not have to accept the tender of this payment from Harve Fender for the reason that he was a stranger to the transaction, in the light of the above quotations from the letter, can not have any weight with this court for the reason that it is clearly apparent that he knew what indebtedness the checks were sent to cancel, and he would have accepted the same from Harve Fender if he had sent the full amount, and offered to accept the payment from Harve Fender if he had sent the full amount, and he can not be heard in this court to now contend that he had no such knowledge, but he is bound by his letter, quotations from which are herein made. The failure of the plaintiff to refuse to accept the checks, on the grounds that the same was not a legal tender, and his omission to make objection to the form of payment is regarded as a waiver of the right to demand payment in money. Ordinarily, the tender of payment by check is not a legal tender, but where objection is not timely made by the payee on this ground, so as to give the payor an opportunity to obtain the money and tender it, the objection will be considered waived.

The later authorities seem to be unanimous upon this proposition, basing it upon modern business methods, as a very large percentage of all business transactions is done by check, drafts, and bills of exchange. Gaunt v. Alabama Bound Oil & Gas Co., Inc., et al., 281 Fed. (C. C. A.) 653, 23 A. L. R. 1279, and the authorities annotated therein.

In the above case it is said:

"It is ordinarily required of one to whom payment is offered in the form of a check that he make his objection at the time to the offer of a check instead of an offer of payment in money. Gunby v. Ingram, 57 Wash. 97, 101, 106 Pac. 495, 36 L. R. A. (N. S.) 232; Shay v. Callanan, 124 Iowa, 370, 374, 100 N. W. 55; Schaeffer v. Coldren, 237 Pa. 77, 84, 85 Atl. 98, Ann. Cas. 1914B, 175; Moore v. Twin City Ice & Cold Storage Co., 92 Wash. 608, 613, 159 Pac. 779, Ann. Cas. 1918D. 540; Wililiston on Contracts, sec. 1819. Payment by check or similar bank paper has become generally recognized as acceptable in business transactions so that the omission to make objection to the form of payment is regarded as a waiver of the right to demand payment in money."

The law does not require an unnecessary thing to be done and the record discloses that the plaintiff would not have accepted the amount of the principal of the note, falling due March 1, 1920, and the accrued interest on the entire mortgage indebtedness, if it had been tendered to him in gold, and he gives his sole reason therefor that defendant Albert S. Rupard had not paid the balance of the down payment.

In the case of Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468, this court held:

"When a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it is reasonably certain that the offer, if made, would have been refused."

The plaintiff, in his testimony, admits that the partial payments made by Rupard on the down payments had been by check, sent through the mail, and had been received, accepted, and retained by him, and that that was the method that had been followed in this transaction for the payment of the indebtedness.

We are, therefore, of the opinion that, in the absence of a specific objection to the method of tender of payment by the plaintiff, the checks having been sent to him for the full amount due, with the money back of the checks to pay the same, and from a person whom the record discloses he knew had an interest in the property, and whom he was willing to accept as paymaster, as disclosed by his letter, of the full amount of the balance due from Rupard, based upon the refusal upon the sole ground that the balance of the down payment was not made, was a sufficient tender of the amount due on said note and that plaintiff waived his right to object to this manner of payment, if a tender were necessary, and he waived his right to demand that the payment should be made on the 1st day of March, the day the same fell due, by his agreement to ac-

cept the payment from the defendant Harve Fender at a later date.

Upon the third proposition, having decided that the first cause of action could not be a basis to declare a breach of the mortgage conditions, and that a good and sufficient tender had been made by the defendant Harve Fender for the payment of the first note and all the interest thereon, we are of the opinion that the plaintiff, as mortgagee, had no right, on this ground, to declare all indebtedness due, under the circumstances disclosed by this record.

Upon the fourth proposition, as to whether the defendants had kept the property in good repair, we are of the opinion that the overwhelming evidence in this case, even of the witness, Mrs. Reeves, the tenant of plaintiff and a witness for plaintiff, is to the effect that repairs were constantly being made by defendants at the expenditure of considerable money, and that the property was in better shape than it was when the defendants came into possession of it, and that it was inspected by the sanitary officer and repairs made to meet all his requirements, and that the property was worth from $20,-000 to $25,000 more than the mortgage indebtedness, and upon this proposition it is our opinion that there is no evidence whatever upon which the court could declare a breach of the mortgage conditions upon this provision of the mortgage, and we are therefore of the opinion that the court erred in finding generally that a breach of the conditions of the mortgage had been made by the defendants in any respect to justify the acceleration of the payments of the notes not due and to declare the entire indebtedness due and order the foreclosure of the mortgage and sale of the property for the satisfaction of the entire debt, for the reason that the causes of action from three to fifteen, inclusive, were prematurely brought.

The cause is, therefore, for the above reasons, reversed and remanded to the district court of Washington county with instructions to the trial court to dismiss all causes of action from three to fifteen, inclusive, for the reason that the same were prematurely brought, and to cause the defendants to pay to the plaintiff the principal sum of $750 on the second cause of action and the sum of $600 interest on the entire indebtedness, due March 1, 1920, in accordance with the tender made by defendants in their answer and cause a surrender of said note in court for cancellation.

By the Court: It is so ordered.