## AMERICAN OIL & REFINING CO. et al. v. CLEMENTS.

No. 12363—Opinion Filed Dec. 11, 1923.

Rehearing Denied April 15, 1924.

Second Rehearing Denied May 20, 1924.

**1. Appeal and Error — Sufficiency of Evidence—Verdict.**

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

**2. Principal and Agent — Compensation of Sub-agent—Liability.**

A principal whose agent employs a sub-agent is liable for the compensation of such agent, if the employment is authorized and ratified on part of the principal by his adopting the acts of the subagent.

**3. Brokers — Earning Commission—Procuring Buyer.**

Where a broker, or agent, furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and if thereafter the seller refuses to comply with his contract, the agent is not required to procure or tender to the seller an enforceable contract.

**4. Same—Financial Responsibility of Buyer.**

When the proposed purchaser was, at the time of the signing of the contract of sale, ready to make the payment then due, the broker, or agent, is not required to show that such purchaser had sufficient funds on hand at that time to make the final payment.

**5. Tender—Failure to Object to Check.**

Failure to make objection to a check as tender at the time of payment is a waiver of the right to demand payment in money.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by J. W. Clements against the American Oil & Refining Company, a corporation, and the Oklahoma Oil Securities Company, a corporation. Judgment for plaintiff, and defendants appeal. Affirmed.

Freeling, Hood & Howard, for plaintiffs in error.

Chastain, Harris & Young and Stuart, Sharp & Cruce, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Oklahoma county by J. W. Clements, defendant in error, plaintiff below, against the American Oil & Refining Company, a corporation, and Oklahoma Oil Securities Company, a corporation, plaintiffs in error, defendants below, for the recovery of $3,800, claimed to be due him as a commission for the sale of capital stock of the American Oil & Refining Company.

The parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The petition alleges that the defendants are domestic corporations with principal places of business at Oklahoma City; that during the month of February, 1917, the plaintiff was employed by the defendants to secure subscriptions for the capital stock of the American Oil & Refining Company, and that, under the terms of the plaintiff's contract with the defendants, he was to receive a commission of ten cents per share of all stock subscriptions he was able to procure; that on or about the 27th day of March, 1917, he procured the subscription for said stock to the amount of 38,000 shares from C. L. JoHansen, and that said stock reservations, or orders, were made in conformity with the terms of defendants' instructions to plaintiff and under his agreement with them. There was attached to said petition as exhibit a true copy of one of the reservation blanks, which was executed by the said C. L. JoHansen, by the terms of which he applied for stock in the said corporation in amounts none less than 500 shares and none more than 5,000 shares, aggregating the total of 38,000 shares; that plaintiff tendered the said reservation orders to defendants together with ten cents per share, being the first down payment, and demanded that he be paid his commission of ten cents per share, as provided by his agreement with the defendants; that defendants refused to accept the applications of the said C. L. JoHansen, without cause, and declined and refused to pay this plaintiff his commission due, under the terms of his said employment, amounting to $3,800, or to issue or reserve said stock, and prayed judgment for $3,800, together with costs of the action.

To a better and fuller understanding of the case we set forth in full exhibit "A," found at pages 6 and 7 of the case-made, which is as follows, to wit:

"Stock Reservation Order.
"Dated at Durant 3-27-1917.
"Oklahoma Oil Securities Co.,
"Oklahoma City, Oklahoma.
"Gentlemen:

"I hereby reserve 50 shares of the stock in the American Oil & Refining Company at $1.25 per share, I am handing you herewith $50 which is 10 cents per share.

"I agree to pay the remaining $1.15 per share provided the American Oil & Refining Company drills in two producing wells within ninety days from the date hereof:

"It is understood that these wells shall each produce one hundred barrels of oil or 10,000,000 cubic feet of gas per day.

"It is further understood that the company now has two producing wells and that the two to be drilled in will make four producing wells before I owe any more on this reservation.

"In the event that the company fails to drill in two additional producing wells as above stated within ninety days from the date hereof the 10 cents per share that I am paying herewith shall be refunded to me.

"It is agreed that I am to have two options of paying the $1.15 per share above referred to: First. I can pay all cash and settle in full for $1.10 per share, or I can pay 15 cents per share within ten days after the second of the two wells shall have been drilled in and 25 cents per share each thirty days thereafter until the full amount shall have been paid.

"It is understood and agreed that I am to pay no interest on the deferred payments on this contract.

"The stock certificate for the number of shares shall be full paid and nonassessable and shall be issued to me as soon as I have completed all payments for same.

"It is understood that my stock shall entitle me to a full pro rata interest in everything that the company now owns or may ever own.

"This contract contains all the conditions of the sale.

"(Signed)  S. L. JoHansen,
"Town, Durant, Okla.
"Box 342.
"Witness

"J. W. Clements

"Representative."

To the above petition defendants filed their joint answer, denying all allegations not admitted, and denied that plaintiff was employed by the American Oil & Refining Company to secure subscriptions for its capital stock, or for any purpose, but admit that he was so employed by the Oklahoma Oil Securities Company and that all transactions had by plaintiff. with reference to stock, occurred between plaintiff and the Oklahoma Oil Securities Company; that all the capital stock of the American Oil & Refining Company, mentioned in the petition, was offered for subscription and sale by said Oklahoma Oil Securities Company, and that plaintiff's connection with such subscription was as agent of the Oklahoma Oil Securities Company and was in pursuance of an arrangement and understanding between the two defendants, by the terms of which the American Oil & Refining Company reserved the right to reject subscriptions, of which plaintiff had knowledge and under which it was its right and privilege to reject the subscription, mentioned in plaintiff's petition, and that in the exercise of such right it did reject the same, and that under such arrangement between the defendants only a limited amount of the capital stock of the American Oil & Refining Company was available for disposal, under the reservation subscriptions mentioned in the petition, of which the plaintiff had knowledge; and the alleged subscription of 38,000 shares was in excess of the stock so available, and the American Oil & Refining Company refused to furnish the same for that, as well as other good and sufficient reasons; that the alleged subscriptions to the capital stock and the payment thereon were not made, as alleged in said petition, or at all; that the alleged subscriber paid nothing at all on said subscription and was not able, ready, and willing to make payments for such stock, or responsible for such payments, according to the terms of subscription contract, and that said subscription and payment were subterfuges, by which plaintiff sought to secure said 38,000 shares of stock without payment therefor, to the end that they might subsequently sell the same in violation of the good faith due from said plaintiff to his said employer, and prayed that the case may be dismissed.

Plaintiff filed reply by way of general denial.

The cause was tried to a jury and at the close of plaintiff's testimony defendants demurred to the evidence, especially as to the liability of the American Oil & Refining Company. The demurrer was overruled and exceptions saved.

The trial resulted in a verdict in favor of the plaintiff in the sum of $3,800, with interest at the rate of six per cent. per annum from April 1, 1917.

A motion for new trial was filed by de-

fendants, presented and overruled; exceptions saved. Judgment was pronounced upon the verdict of the jury in the sum of $2,610, principal and interest, with interest at the rate of six per cent. per annum from the 20th day of October, 1920, from which judgment this cause comes regularly on appeal by the defendants to this court.

The attorneys for defendants set up five assignments of error, but choose to submit their argument under three separate and distinct heads, which are as follows:

"I. The court erred in overruling the demurrer of the American Oil and Refining Company at the close of plaintiff's case.

"II. The check sent by the plaintiff and rejected by the Oil Securities Company did not constitute a payment on said stock and the Oil Securities Company had a right to reject same.

"III. The court erred in refusing instructions requested by the defendants. The defendants requested the court to instruct the jury as follows, which was refused by the court.

"The court instructs the jury that the 10 cents per share to be collected by the plaintiff as the agent of the defendant on his subscriptions for stock would become and be the property of the defendants, and the plaintiff would have no interest whatever in it, and unless expressly authorized he would have no authority to accept anything but lawful money in payment of it.

"Requested by defendants, refused by the court and excepted to by the defendants.

"Geo. W. Clark, Judge."

The first proposition urged by attorneys for defendants is that the court erred in overruling the demurrer to the American Oil & Refining Company at the close of the plaintiff's case.

It will be necessary in passing upon this assignment of error to examine the testimony in this case. The defendant the American Oil & Refining Company had an authorized capital stock of 1,000,000 shares of the value of one dollar per share. 500,000 shares had been set aside as treasury stock. This treasury stock it determined to place upon the market and made an oral contract with Stanley H. Watson to take over the sale of said stock, but it was afterwards determined to organize the Oklahoma Oil Securities Company to take over the contract of Watson, and the purpose of the organization of the Oklahoma Oil Securities Company was to take over the contract of Watson and to sell this treasury stock as agent, trustee, or broker, and this was the only business it ever did transact, and the officers of the two defendant companies were the same,

having the same telephones, and, as testified to by the president of the two companies, W. D. Skirvin, that he had supervisory power of all business of both corporations, paid the office rent and expenses of the office at the beginning, and maintained his office with the manager of the Oklahoma Oil Securities Company, and was advised of every transaction connected therewith and advised and controlled the manager and knew all that was going on in this office. Stanley H. Watson was the first manager and upon his death he was succeeded by N. A. Clay as manager, who was employed by W. D. Skirvin, the president of both companies, and all the matters and things connected with this cause of action transpired while N. A. Clay was acting as manager of said Oklahoma Oil Securities Company. It became necessary to appoint and authorize agents to put on the campaign of selling this stock as neither of the defendants acted in the matter except through these several agents. The plaintiff in this action became connected with the sales of stock by first purchasing 100 shares of this stock from O. L. Perry, one of the agents for the sale of the stock, who furnished him some blank applications to take subscriptions for reservations of said stock. Plaintiff obtained some subscriptions upon these blanks furnished, which he sent in to the defendant Oklahoma Oil Securities Company, which subscriptions were accepted by the company and commissions paid of ten cents for each share of stock, for which the subscriber was to pay $1.25 in payments, as heretofore set forth in this opinion in the form of stock reservation orders, and upon the conditions mentioned in said stock reservation order. Upon receipt of these reservation orders, sent in by plaintiff, the manager, N. A. Clay, wrote letters of commendation to the plaintiff, urging him to proceed with the sale of the stock, and on February 24, 1917, he wrote plaintiff the following letter:

"Oklahoma Oil Securities Company.

"Incorporated.
"Skirvin Building.
"Stanley H. Watson,    Member,
"Manager         Oklahoma Oil Exchange.
"Oklahoma City, Oklahoma.
"February twenty-fourth,
"1 9 1 7.

"Mr. J. W. Clements,
"Marietta, Okla.
"Dear Mr. Clements:

"We are surprised to hear this morning that you had not received our letter confirming our agreement to accept five hundred shares of stock from you and to allow you as commission thereon, 10 cents per share.

"At the same time to the same place, we

forwarded you some literature. We are duplicating this supply today and are sending you same under separate cover to Marietta.

"Will you please let us know by phone if they fail to reach you.

"This will be an authority for you to accept contracts on this reservation plan, until such a time that you may be advised to contrary from this office.
"NAC. AB

"Yours very truly.
"By N. A. Clay."
"Okahoma Oil Securities Co.

And plaintiff testified that this is the only contract in writing that ever passed between himself and the company. although a 'copy of a letter was introduced that the defendant company claims was mailed to plaintiff prior thereto, but plaintiff denies that it was ever received by him, in which letter it claimed the right to accept or reject all applications. or orders. for stock. Plaintiff testified that he acted entirely, after the 24th day of February, 1917, upon the letter of that date. a copy of which is heretofore set forth in this opinion; that acting under this letter, from time to time, he sent in application orders for reservations of stock of the company, ranging from a few shares up to 9,000 and the evidence is that, as a matter of bookkeeping only, the company required the plaintiff to send in his personal check for the ten cents per share down payment and the company would immediately mail its check back to plaintiff for this amount as his commission, which he was entitled to under the contract; that none of plaintiff's orders were rejected by the company until plaintiff. on March 28. 1917, sent in to the company orders, signed by C. L. JoHansen, for 38,000 shares, together with his check for $3,800; that, on the day he sent in these orders, he had a telephone conversation with N. A. Clay, in which Clay, as manager of the company. commended him for his good work and urged him to take all orders he could. as the campaign would be closed for the sale of stock some time during the first days of April, thereafter, and in this conversation the agent. Clay, informed plaintiff that he would mail him additional books, containing blank orders for further reservations of stock, which books were actually sent by special delivery mail to plaintiff on the 29th day of March, 1917, and on the very day that the plaintiff secured the orders from C. L. Jo-Hansen, the company, through its agent sent a letter congratulating p'aintiff. in which it said:

"I want to congratulate you upon the very splendid campaign you are conducting in that section and assure you that all of your customers will hear favorably from us in the course of the next few days."

The orders for the 38,000 shares were mailed to the company on the 28th day of March, 1917, and on the 31st day of March, 1917, they were rejected by the company for the sole and only reason, as contained in their letter returning the reservation orders and check, in the following language:

"We beg to advise that we cannot accept this business on account of the amount representing an oversubscription of this allotment of stock."

But the company continued to accept other orders, sent in by plaintiff for reservation of stock, upon their receipt, accompanied by plaintiff's personal check; and at no time and no place does it appear that the company ever refused to accept each and all orders, without any investigation of the financial solvency of applicant, and each and every personal check of plaintiff. except to this one particular instance, and it occurs in the testimony that this same party, C. L. JoHansen, had been allotted 9,000 shares of this stock prior to this time. upon order secured by this plaintiff, and it further appears in the testimony that no notification was given to the plaintiff or other agents of the company that the stock was withdrawn from sale until the 2nd day of April, 1917.

There was further testimony that plaintiff did not have actual cash to his credit in the bank upon which the check was drawn in the sum of $3,800, but that the defendants were informed that plaintiff had about $1,000 in the bank, and had made arrangements at the bank to have the check paid when presented, and the testimony further shows that the subscriber, JoHansen, did not have $47,-500 at the time of the transaction to pay for said stock, but it was further shown, on part of the plaintiff, that JoHansen had placed a large portion of this stock with other parties, and that he was a man of some means, and he, himself, testified that he would have been able to meet the payments as they fell due, and it was further shown that the stock, soon after this transaction and before any further payment was due, practically doubled in value, and the testimony further showed that the plaintiff accepted title to the equity owned by Jo-Hansen in a 320-acre farm as a down payment of the ten cents per share, required under the terms of the stock reservation order. and which was the plaintiff's commission for securing this order. but that plaintiff sent his personal check, as he had been doing on all other orders, to the company for $3,800, as heretofore stated, that he had made arrangements to have taken care of

by the bank when presented. The stock reservation certificates, by the terms, show how and when the payments were to be made on the deferred payments, and no stock certificates were to be delivered to any subscriber until every share was paid for in full.

This, in substance, is a fair statement of the important facts, as presented to the court and jury, and at which the demurrer of the defendants was leveled.

Attorneys for defendants contend that the demurrer to the evidence of plaintiff should have been sustained and urge that the evidence shows that the employment of plaintiff was by the defendant Oklahoma Oil Securities Company, and that there was no agreement or understanding by him with the American Oil & Refining Company, and that the two corporations were two distinct and different entities.

Upon a very careful reading of all the testimony introduced on part of the plaintiff we are forced to the conclusion that unquestionably the defendant Oklahoma Oil Securities Company is liable to this plaintiff, under the testimony, and plaintiff was entitled upon the proof offered by him to have the same go to the jury. We are forced to the conclusion that while the two companies were conducted, managed, and directed by W. D. Skirvin, the president of both companies, who interchangeably acted as president and manager, after he hired the manager, and at the beginning of the smaller company paid the office rent and other expenses of this company, and he, as president, and his secretary, who was also secretary of both companies, occupied the office with the manager of the smaller company, answered the telephone and communications to said company, and directed all of the business of the smaller company, and that, so far as the conduct of the affairs of this company is concerned, the two companies seemed to have been practically a one man company. The small company was organized as a matter of convenience for the sole and only purpose primarily to sell the stock of the larger company, and this business was the sole and only business that it ever conducted, during its lifetime, and the larger company, through its officers, had full knowledge of the connection of plaintiff with the smaller company, under his contract for the sale of the stock for which said smaller company was organized. The orders sent in by plaintiff for reservations of stock had always been accepted, without question and without any investigation as to the financial solvency of the applicants, and his personal checks, sent with the applications, had always been accepted by the defendant until the application for the 38,000 shares, accompanied by his personal check for $3,800, complained of in this action, was refused for the sole and only reason, assigned at the time, that the amount represented an over-subscription of the allotment of stock, although the company's agents had congratulated him upon this identical sale over the telephone, and on the next day had sent him additional blank applications, upon which to negotiate additional reservations, and, in a letter of the same date that this reservation was made, advised him, "* * * That all of your customers will hear favorably from us in the course of the next few days," and congratulated him upon the splendid campaign he was conducting, which, in effect, was an acceptance of this order, as we view it. The plaintiff introduced a letter received by him from the Oklahoma Oil Securities Company, which authorized him to accept contracts on the reservation plan, as shown by the application blanks, one of which is set forth in this opinion, "* * * Until such a time that you may be advised to the contrary from this office," and the record shows that he was advised with all the other agents of the company by messages sent to each to cease further sales on the 2nd day of April, 1917, then, under the plain directions of this letter, under which the plaintiff was acting, and under the letters of commendation for his good work and the telephone conversation, which, in effect, accepted this order, complained of, and the further fact that other orders, sent in by the plaintiff after this date, were accepted by the company, we are forced to the conclusion that this evidence was properly submitted to a decision of the jury.

It is further complained of by attorneys for defendants that the personal check was not sufficient tender, although the evidence on part of the plaintiff showed that he had some money in the bank and had made arrangements with the bank to pay this check when presented, and the further fact that this matter of sending the check was a mere matter of bookkeeping, and the further fact that this was the method agreed upon by the plaintiff and defendant of carrying on this business, and the further and more important fact, which is fatal to the contention of defendants, that they made no objection at the time to this form of tender and did not reject the application upon this account at the time, so as to give the plaintiff an opportunity to make the tender in cash, the defendants cannot at this time urge this as a ground for reversal of this cause.

This court, in the recent case of Rupard et. al. v. Rees, 94 Okla. 49, 220 Pac. 893, held:

"Failure to make objection to a check as tender at the time of payment is a waiver of the right to demand payment in money."

Which is conclusive upon this phase of the case.

It is further contended by attorneys for defendants that C. L. JoHansen was not financially responsible, and was not able to pay the $47,500 for this subscription of stock, and that he did not pay $3,800 in cash as the down payment. It was shown by plaintiff that this application had already bought 9,000 shares of stock, was a man of some means, had negotiated a large block of this stock subscribed for, and that, under the terms of the application, he had settled for the down payment of ten cents for each share by deed to the plaintiff for his equity in 320 acres of land, and that he had time to make partial payments, in the event that he had to make the payments, and that the stock increased in value nearly double before he would have had to make further payment at all, forcing us to the conclusion that this contention of attorneys cannot be sustained. The complaint that the agent took the amount of his commission in land rather than in money, under the system of bookkeeping and the system followed in these transactions with plaintiff, was of no material interest to the defendants, as this plaintiff was entitled to the immediate return to him of the company's check of this amount of money, and what he did with it was a matter that only concerned himself. Coupled with the further fact that no stock was to be issued by the company until the entire amounts had been paid by the subscriber was a full protection to the company for the further payment of the unpaid installments.

The rule to be applied upon a demurrer to the evidence, as construed in the case of Great Southern Life Ins. Co. v. Long et al., and Ginner & Miller Pub. Co. v. Sherman Machine & Iron Works, 93 Okla. 221, 220 Pac. 650, is that:

"Admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith."

And, in such a case, the demurrer must be overruled. This has been so generally followed by this court that it is unnecessary to cite further authorities thereon, and applying this rule to the instant case, we are forced to conclude that the trial court was correct in overruling the demurrer to the evidence.

There is no question, in our opinion, that the smaller company, as broker, had full authority to employ agents for the sale of the stock of the larger company, and, under the peculiar circumstances of this case, that the larger company authorized the smaller company to employ subagents and had full knowledge of the employment of this plaintiff, and that it acquiesced in and ratified the employment of plaintiff, and this being our conclusion, all authorities agree that the larger company was responsible to the plaintiff for the payment of this commission, and that this plaintiff had full authority to take such subscriptions and to demand the commission claimed under his contract up to and including the 2nd day of April, 1917, the date of the notice that was contemplated would be given by the letter of February 24, 1917, which authorized plaintiff to accept contracts until such time that he was advised to the contrary from the office of defendants.

This court has held where a broker, or agent, produces a purchaser ready to make the payment then due, the broker is not required to show that such purchaser had sufficient funds on hand at that time to make final payment. The general rule of law is that a broker, in order to earn his commission, must produce a purchaser ready and willing to make the payments upon the terms and within the time provided in the subscription order. Bleeker v. Miller et al., 40 Okla. 374, 138 Pac. 809; Thornburgh v. Haun, 79 Okla. 103, 190 Pac. 1083. And this rule was fully met by the plaintiff in this case.

Having presented our reasons heretofore after a full and careful examination of the able briefs of counsel, submitted, and the record, we think that the second proposition, presented by counsel for defendants, has no merit under the peculiar circumstances of this case, and for the same reasons we do not think that the defendants were entitled to the instruction refused by the trial court and that the instructions given to the jury fairly stated the law of this case, and the jury having found its verdict against the defendants, based upon the law and the evidence, we conclude that the verdict of the jury was correct and that the judgment of the court upon said verdict is fully sustained by the law and the evidence and that there was no reversible error committed by the court in the

trial of this cause, and that this court should not disturb the verdict and judgment of the trial court on appeal.

We are, therefore, of the opinion that the judgment of the trial court should be and is hereby affirmed.

By the Court: It is so ordered.