### Frank E. Gould v. Ricard Boiler & Engine Company.

#### Gen. No. 13,277.

COMMISSIONS—*when salesman entitled to.* A salesman is entitled
to his commissions where he is the procuring and efficient
cause of bringing about a sale, notwithstanding the same was not
actually concluded by him.

BAKER, P. J., dissenting.

Assumpsit. Appeal from the Superior Court of Cook County; the
Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Ap-
pellate Court at the October term, 1906. Reversed, and judgment
here. Opinion filed October 4, 1907.

**Statement by the Court.** This is a suit brought by
appellant to recover commission for the sale to a third party
of boilers manufactured at Toledo, Ohio, by appellee.   Ap-
pellant had been acting as appellee's representative at Pitts-
burg, Pa.  There on the 11th of February, 1905, appellee
communicated with him over the long distance telephone,
and then sent him the following letter:

"Toledo, O., February 11th, 1905.
Mr. F. E. Gould, Pittsburg, Pa.
Dear Sir:  In regard to the Chicago matter, would say
we are willing to turn over the deals we are working upon

which amount to about 12,000 h. p.    We have spent considerable money on the same.

Would you be willing to work these deals on the following terms?    We advance the expense money for the trip from Pittsburg to Chicago and reasonable hotel expenses while there, you to furnish any other expense money and to get commission of 50 cts. per h. p. out of said commission, you to pay the above expenses.    We would expect you to handle Boilers and not Stokers, as to do so would antagonize some friends we have there in the Stoker business.    Besides the above amount, we have one deal which we expect to close up next week, which we have spent considerable time upon and made drawings for same, however, if you get there in time to help on this deal, we would make something in it for you.

These deals will not keep and the matter will have to be taken up the first part of next week.    If possible, you should be in Chicago by Wednesday.

Awaiting your reply, we are

Very truly yours,

THE RICARD BOILER AND ENGINE Co.,

Per W. D. McNaull.

Dic. by W. D. McN."

On the 14th of February appellee wrote appellant enclosing a check for $50 "for your trip to Chicago," and concluding as follows:    "The following are some of the people that you want to see while there    *    *    *    Mandel Bros., State and Madison streets.    We have sent Mandel Bros. specifications and blue-prints for their job and prices on boilers.    Trusting you may be able to land something while there, we are Yours truly, The Ricard Boiler & Engine Co.    Per N. J. Ricard, Pres."

Upon receipt of this letter appellant states that he immediately went to Chicago, called upon the general manager of Mandel Bros., and interviewed their operating and consulting engineers.    Finding that there were no papers or duplicate sets of specifications upon which appellee had submitted the proposals it had already made to Mandel Bros., appellant communicated with appellee and received the duplicates.    From these, as he states, he ascertained that the

boilers which appellee had made proposals to furnish were a double drum type of water tube boiler and discovered that the space designed for them in the sub-basement of Mandel Bros. where they were to be located would not permit the installation of that type of boiler. This fact appellant communicated to appellee and requested the submission of a new proposition and blue-prints, with new designs for a special boiler such as could be erected in the allotted space. His request was complied with and he submitted the new proposition to Mandel Bros.' representative. He states that he took the matter up with the operating and consulting engineers of Mandel Bros. and secured their approval of the single drum type of boiler provided for by the new blue-prints and specifications. It appears that he spent about two weeks negotiating with Mandel Bros. and their representatives.

On the 22nd of February appellant received a letter from the manager of Mandel Bros. asking him to call. Upon doing so he was advised that Mandel Bros. had decided to award the contract to appellee, provided the latter could give satisfactory references from parties who were using appellee's boilers. At appellant's request appellee sent to Mandel Bros. references such as were required, and telegraphed appellant that it had done so. Appellant states that he then received from Mandel Bros.' manager a proposition to buy and that the figures therein proposed were practically the prices he had been authorized to name. Appellant states that he thereupon left Chicago, went to Toledo and submitted to appellee the proposition made by Mandel Bros., as follows:

"March 1, 1905.

The Ricard Boiler & Engine Co., Toledo, Ohio.

Gentlemen: We handed your representative, Mr. Gould, a copy of the contract and specifications required for the erection and completion of the boilers, superheaters, furnaces, breaching, up-takes, etc., for our new building. When you have approved the papers and drawn detail plans for the outfit, kindly forward them to us. If satisfactory to us, the

contract, specifications and plans will be signed and returned to you without delay. The entire cost to be $31,795.00.

Respectfully yours,

MANDEL BROTHERS,

D. F. Kelly, Manager."

Appellant testified that when he presented this letter to appellee's representatives he was told that it might be necessary for him to return to Chicago at the time of the final closing of the contract and that he replied that he would hold himself in readiness to go there at any time they might require. On the 20th of March, while appellant was at Middletown, Ohio, conducting some negotiations on behalf of appellee, the latter telegraphed him at Toledo as follows: "To F. E. Gould. We closed contract with Mandel Brothers, Chicago, last week."

Previous to this time and before appellant left Chicago he had written appellee advising the latter that Mandel Bros. had secured prices as low as $30,800 for the complete job, that "I get it at $31,975, provided they get favorable answers to their letters of inquiry," and concluding, "Have done my part." He testifies that he had been told to stay in Chicago until the job was settled one way or the other, and that he did stay until the contract was awarded to appellee. His testimony is that the price of $31,975 was in excess of appellee's original proposition of $34,900, which had been submitted to Mandel Bros. before he was employed in the matter at all, because of the omission from the proposed contract of certain things included in that original proposition. There is testimony tending to show that the specifications submitted to Mandel Bros. through appellant were substantially the specifications finally adopted as a basis of the final contract. It appears the length of the tubes was changed from 20 feet to 18 feet, and that there may have been other differences. Appellee had been negotiating with Mandel Bros.' representatives with reference to these boilers for nearly a year prior to the time when it put the deal into the hands of appellant.

The proposition which appellant received from Mandel

Bros. and submitted to appellee appears not to have been acted upon either one way or the other for some days thereafter. One of appellee's officers states, "There was nothing happened for some little time and finally a letter came to my desk from Mr. Kelly of Mandel Bros. It must have been a week or ten days or maybe two weeks after. Mr. Ricard took up the correspondence, came to Chicago and took up further negotiations with Mandel Bros. I came here after Mr. Ricard had been negotiating the deal." The witness states that the final contract which is in evidence did not include foundations. Appellee's president, Mr. Ricard, testifies that when appellant presented the proposition from Mandel Bros., offering $31,975, he was told that it could not be accepted and that appellant said he had done his best. He says that appellee could not accept any such proposition. This witness testifies that he received a letter from Mandel Bros.' representative dated March 8th, and on the 14th of March received a telegram and thereupon he went to Chicago at the solicitation of Mandel Bros.' agent to reopen negotiations and see what there was to be done; that he told Mandel Bros.' agent appellee could not accept the proposition made to Mr. Gould, whereupon said agent "wanted to know what I would do. I stayed there and figured perhaps three or four hours and the conclusion I came to was $37,500. Then he cut out the foundations and some other things and I reduced it to $35,750, and the contract was finally closed at that price." He says the payment of sub-contractors was omitted from the final contract and was assumed by Mandel Bros.

The contract as finally closed provided for boilers having 1,950 horse power. Appellant claims to be entitled under his agreement with appellee to 50 cents per horse power, amounting to $975. The expenses advanced him by appellee were $170 and this sum deducted leaves a balance of $805, which appellant seeks to recover in this suit.

The cause was submitted to court, a jury having been waived. The court refused to find propositions of law as requested by appellant's counsel, and found the issues in favor

of appellee.    Judgment was rendered against appellant for costs, and the garnishee was ordered discharged.    From that order and judgment this appeal is taken.

DOLPH, BUELL & ABBEY, for appellant.

LEMUEL H. FOSTER, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellee that under the common counts appellant could only recover by showing complete performance on his part and that in this he has failed; that by the agreement between the parties appellant was required to sell boilers in order to be entitled to the commission and that this he did not do.

The contract of employment as proposed by appellee and under which it is conceded appellant was acting, is embodied in appellee's letter of February 11, 1905.    By its terms appellee agreed to turn over to appellant certain deals upon which it had been working in Chicago, and appellant was to "work these deals."    Appellee agreed to advance him railroad fare and reasonable hotel expenses, and to pay him a commission of 50 cents per horse power, less the expenses which appellee should so advance.    In a subsequent letter appellant was given the names of the parties in Chicago whom appellee wished him to see.    One of these was Mandel Bros., with whom, as he was advised, appellee had been negotiating and to whom it had sent "specifications and blue-prints for their job and prices on boilers."    There is a dispute as to whether appellant stopped at Toledo and received further instructions on his way from Pittsburg to Chicago.    Appellee introduced witnesses who state that appellant did so stop over and the latter testifies positively that he did not.

The controversy between the parties, however, is mainly over the construction to be placed upon the contract of February 11, 1905.    There is no provision in it to the effect that appellant should receive no commission unless he should

personally conclude a contract with the purchaser for boilers upon terms which, in the first instance and in every particular, should be accepted by appellee without modification. The reasonable construction is, we think, that if by his efforts the buyer should be induced to purchase the type of boiler made by appellee and a sale should be ultimately effected, appellee would be entitled to his commissions. We deem it immaterial whether the terms of the sale as finally effected should be in all respects identical with the first proposals obtained by appellant from the buyer. It is conceded by counsel on both sides that appellant was not to be entitled to the commission unless a sale was actually consummated. But the sale was consummated and in general accordance apparently with the proposition made to appellant by the buyer, although there were some modifications as to the work to be done and the price to be paid. There is nothing in the wording nor spirit of the agreement of February 11th—proposed and formulated by appellee and accepted, and acted upon by appellant—that can warrant the construction contended for by appellee to the effect that appellant was required to obtain a proposal from the buyer and then obtain appellee's assent to that proposal in every detail in order to be entitled to the commission. Under such a construction appellee might avoid payment by merely objecting to certain details of the proposal as submitted, throw appellant aside, consummate the deal directly with the buyer on a slightly different basis, and obtain all the benefits of appellant's services without compensating him at all. If in fact through appellant's efforts the purchaser had been influenced to conclude that the boilers manufactured and sold by appellee were adapted to its purpose, to decide therefore to purchase them if terms could be agreed upon, when the first offer was not accepted renewed the negotiations so that an agreement was reached and the sale consummated, it is difficult to discover why the commission was not earned. It is apparent from the evidence that it was through the work done by appellant that the purchaser was induced to select appellee's boilers. It was natural that

having decided upon these boilers, the buyer should endeavor to obtain them as cheaply as possible, and that failing to get appellee to accept the trial price so offered, the buyer should renew the negotiations as it did. Instead of sending back appellant, who was still engaged in work for appellee, the latter's president took up the matter. This he had a right to do, but could not thereby affect appellant's right to compensation for what he had accomplished. The president says the purchaser "wanted to know what I would do. I stayed there and figured perhaps three or four hours and the conclusion I came to was $37,500. Then he cut out the foundation and some other things and I reduced it to $35,750, and the contract was finally closed at that price." When it is remembered that appellee had been negotiating for this sale without success for a considerable time before the deal was put into appellant's hands, that there were rival parties figuring on the job, that appellee had been proposing to put in boilers of a type at least unsuitable and apparently impossible in the place where they were to be located, that it was at appellant's instance that a new and practicable proposal and new specifications were submitted upon the basis of which the sale was finally made and that it required only "three or four hours" of figuring by appellee's president to agree upon the price and conclude a transaction in which it had been unable to make any progress until appellant took hold, it is, we think, sufficiently apparent that the sale was concluded thus promptly only because of appellant's services previously rendered. The contract of February 11th literally required of appellant only that he should "work the deals." This he indisputably did. But if the phraseology be construed as requiring he should work the deal effectively we are of opinion the evidence sufficiently shows that he did so. It was natural perhaps that appellee, finding the buyer at length desirous of purchasing its type of boilers, should try to get the best price possible.

It is argued in behalf of appellee that appellant abandoned the negotiations after appellee refused the buyer's

first offer of $31,975 and cannot therefore recover commissions. Appellant's testimony is that appellee's officers did not tell him they would not accept the terms offered, but that they said to him at the time he submitted the proposal that it might be necessary for him to return to Chicago at the time of the final closing of the contract; that he told them he would hold himself in readiness to return at any time they might require, and that the next he heard about the contract was the telegram from appellee sent to him at Middletown, Ohio, where he was working on a contract for appellee with a paper company in that place. The telegram told him that the contract with Mandel Brothers was closed. He states that when he submitted the proposal of Mandel Brothers to appellee he told the latter there would be some adjustment necessary on account of certain extras, and that the price of $31,975 offered by Mandel Brothers through him was in excess of appellee's original proposition of $34,900 made to Mandel Brothers before the matter was put in appellant's hands, taking into consideration the omission of superheaters and stokers. There is conflict in the evidence as to these matters, but if we accept appellee's version in regard to them it does not tend to show that appellant abandoned the matter. Appellee's vice-president testifies that he advised appellant to drop the matter and come back to Toledo and put in no further time on that basis. He states also that by the final contract of sale, appellee secured "a smaller or less price for superheaters" than it had originally proposed to take. In view of the undisputed evidence that appellant was still acting for appellee when the contract was closed and apparently subject to their orders and that he acted upon appellee's order in leaving Chicago when he did, the contention that appellant cannot recover because he abandoned the negotiations before the contract was finally closed, is not sustained by the evidence.

The trial court held of its own motion as follows: "Upon the facts in this case so long as the plaintiff did not continue his efforts until he procured an offer from the one party which was accepted by the other there could be no re-

Gould v. Ricard B. & E. Co.

covery upon the contract of employment." In this we are unable to concur. The effect of what appellant did was to induce the buyer to purchase certain boilers of appellee and the buyer did so purchase at a price which appellee and the buyer were both willing to and did accept. Appellant was therefore entitled to the commission. Carter v. Webster, 79 Ill., 435–436. In Wilson v. Mason, 158 Ill., 304–310, it is said: "If the principal accepts the purchaser thus presented either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned"; and further (page 311): "The true rule is that a broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract." This rule is, we think, applicable where as here the broker was employed to work up a sale to a possible buyer pointed out by the employer and does so. In Hafner v. Herron, 165 Ill., 242–246, it is said: "Nor is it always necessary that the purchaser should be actually introduced to the owner by the broker, provided it appears affirmatively that the purchaser was induced to apply to the owner through the instrumentality of the broker or through means employed by the broker. It is sufficient if the sale is effected through the efforts of the broker or through information derived from him (citing cases). It is true also that where the seller consummates a sale of property upon different terms than those proposed to his agent, the latter will not be thereby deprived of his right to his commissions."

For the reasons indicated the judgment of the Superior Court must be reversed and judgment will be entered here in favor of appellant for $805 and costs.

*Reversed and judgment here.*

MR. PRESIDING JUSTICE BAKER dissenting.