[Civ. No. 5572.    First Appellate District, Division Two.—June 23, 1926.]

LICHTIG & ROTHWELL, INC. (a Corporation), Appellant, v. DOROTHY PHILLIPS HOLUBAR, Respondent.

[1] BROKER'S COMMISSIONS—PROCUREMENT OF EMPLOYMENT AS ACTRESS—FINDINGS—EVIDENCE.—In this action for broker's commissions alleged to have been earned in procuring for defendant a professional engagement as an actress with a motion picture corporation, the evidence was sufficient to support the findings that defendant did not employ the plaintiff as her agent to negotiate for the engagement mentioned; that the plaintiff rendered no services in defendant's behalf, and that the plaintiff did not procure for her the engagement in question.

[2] ID.—FINDINGS—CONSTRUCTION—PROCURING CAUSE OF CONTRACT.—In such action, such findings must be viewed in the light of the rule of law applicable to the right of a broker to recover commissions where it is claimed that his efforts were not the procuring cause of the contract or benefit which the principal obtained, said rule of law being that in order for the broker to recover, the evidence must show that his efforts were the procuring cause and not merely one in a chain of causes.

---

(1) 4 C. J., p. 883, n. 33.    (2) 4 C. J., p. 878, n. 82; 9 C. J., p. 611, n. 6, p. 613, n. 11.

2.  See 4 Cal. Jur. 584; 4 R. C. L. 304.

APPEAL from a judgment of the Superior Court of Los Angeles County.    Ira F. Thompson, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Loyd Wright and Charles E. Millikan for Appellant.

Bauer, Wright & Macdonald, Alexander Macdonald and Frederick W. Williamson for Respondent.

NOURSE, J.—Plaintiff, a California corporation engaged in the business of acting as a broker or agent for actors and others engaged in the business of producing motion pictures, sued the defendant for two thousand dollars for services alleged to have been rendered in that capacity for the benefit of the defendant Dorothy Holubar, also known as Dorothy Phillips. The other defendant, Allen Holubar, who was sued as the husband of Dorothy Holubar, died during the pendency of the action and the suit was as to him dismissed.    Judgment went against the plaintiff, from which it has appealed on a typewritten record.

The action is based upon the ground that the plaintiff, at the special instance and request of the defendant, acted as a broker for the defendant in procuring for her a professional engagement as an actress with the Principal Pictures Corporation, a corporation which was engaged in the business of producing motion pictures.    The trial court found that the defendant was not indebted to the plaintiff because she had not employed the plaintiff as her agent to negotiate for the engagement mentioned; that the plaintiff rendered no services in her behalf, and that the plaintiff did not procure for her the engagement in question.    [1]    The plaintiff's sole attack on this appeal is that these findings of the trial court are not supported by the evidence.

The evidence upon all the issues involved is conflicting and for that reason we must take the story of the case most favorable to the respondent upon the well-known rule that if we find in the record competent evidence which might have been believed by the trial court that finding should not be disturbed on appeal.    Looking at the record in this light we find that some time prior to June 14, 1922, the plaintiff was approached by officials of the Principal Pictures Corpora-

tion, a corporation engaged in the production of motion pictures, and which was then contemplating the filming of a picture to be entitled "The World's a Stage," for the purpose of securing a list of actresses available to play the leading part. On June 14, 1922, the plaintiff submitted to Mr. Rosenberg of the Principal Pictures Corporation the name of Dorothy Phillips, among others, for that engagement. This was done without the knowledge or consent of Dorothy Phillips, and the suggestion was wholly voluntary on the part of the plaintiff. Mr. Rosenberg chose Dorothy Phillips' name from the list and informed the plaintiff that they would be interested in procuring her services, if she would accept employment at a salary of ten thousand dollars. On the same day an officer of the appellant met with Dorothy Phillips and her husband and suggested to them the possibility of this engagement. The appellant's story of this conversation differs widely from that given by the respondent. On the part of the appellant it is claimed that its representative presented the possibility of such engagement to Mrs. and Mrs. Holubar, but that the latter replied that she was then under engagement with another concern and would not be able to accept employment with the Principal Pictures Corporation. When she was asked what salary she would desire she stated that she would demand twenty-five thousand dollars. To this the representative of appellant replied that he did not think that this was too much money, but that he would present it to his principal; that thereupon Mr. Holubar asked him who his principal was and was told that it was Sol Lesser, president of the Principal Pictures Corporation. The following version of the conversation between these parties was then given by the representative of appellant: "He said, 'Well, if it is Sol Lesser,' he said, 'I know Sol very well, and,' he said, 'I would do anything I could in the situation.' And he said, 'You haven't any objection at all, Ben, if I deal with Sol direct?'" And he said, 'You will get yours just the same.' I said, 'Not a bit in the world, Allen, and any way I can help you to get together, let me know.'" The respondent's version of this meeting differs in important particulars from that given by the appellant. She testified that when appellant's representative first suggested the engagement to her she stated that she was not interested because she was already under

contract with another concern and would, therefore, be unable to accept the engagement proposed by the appellant. She also testified that she did not hear anything said regarding her husband's negotiating directly with Mr. Lesser and that appellant's representative did not .mention Mr. Lesser's name during the conversation; and further that she stated that she was then receiving a salary of twenty-five thousand dollars and would expect the same from the engagement suggested by appellant, and that appellant's representative thereupon replied that his principal would not pay such a price, but that they would be willing to pay the sum of ten thousand dollars. Mr. Lesser, president of the Principal Pictures Corporation, testified that appellant's agent called upon him after his conversation with the respondent and reported that the respondent demanded a salary twice what they were willing to pay and suggested that he might do better by conferring directly with Mr. Holubar. Thereafter Mr. Holubar called upon Mr. Lesser and was tendered a proposition for ·the employment of respondent. In a day or two thereafter Mr. Lesser was notified by the respondent that she would not accept the engagement at the price suggested and the Principal Pictures Corporation thereupon employed another actress to take the part. Negotiations for the engagement of the respondent were thereupon dropped by the Principal Pictures Corporation, but some time thereafter Mr. Levy, who was engaged with the respondent in the production of another picture, approached the Principal Pictures Corporation and through his negotiations the respondent was engaged to take the leading part in ''The World's a Stage'' and received for her services the sum of fifteen thousand dollars in cash and his promissory note for five thousand dollars.

On this evidence the trial court found that the respondent did not employ appellant to perform any services for her; that the appellant did not perform any services for her benefit; that she did not authorize the appellant to carry on or conduct any negotiations with the Principal Pictures Corporation in relation to such employment; and that respondent's engagement with the Principal Pictures Corporation was not the result of any agreement of employment between appellant and respondent or of any services rendered by the appellant for the benefit of the respondent.

Conceding, as we must, that there is evidence in the record which would have fully justified a finding on the part of the trial court that the respondent was liable for the commissions claimed, our inquiry is closed by the findings which the trial court made and which we have seen are supported by substantial evidence. The effect of these findings is that the appellant was not the procuring cause resulting in the consummation of the contract between the respondent and the Principal Pictures Corporation.

[2] These findings must be viewed in the light of the rule of law applicable to the right of a broker to recover commissions where, as here, it is claimed that his efforts were not the procuring cause of the contract or benefit which the principal obtained. This rule of law is well stated in *Sessions* v. *Pacific Improvement Co.*, 57 Cal. App. 1, 17 [206 Pac. 653, 660], where this court said: "To constitute himself the *causa causans*, the predominating effective cause, it is not enough that the broker contributes indirectly or incidentally to the sale by imparting information which tends to arouse interest. He must set in motion a chain of events, which, without break in their continuity, cause the buyer and seller to come to terms as the proximate result of his peculiar activities."

The rule is stated in another way in the Sessions case as follows: "In order for the broker to recover, the evidence must show that his efforts were the procuring cause and not merely one in a chain of causes. The expression 'procuring and inducing cause' as used in the books refers to the cause originating from a series of events that, without break in their continuity, result in the prime object of the employment of the agent." This same rule was quoted with approval in *Roth* v. *Thomson,* 40 Cal. App. 208, 215 [180 Pac. 656], as coming from *Smith* v. *Preiss,* 117 Minn. 392 [Ann. Cas. 1913D, 820, 136 N. W. 7], and in the Sessions case it is quoted as coming from *Park* v. *Culver,* 169 Mo. App. 8 [154 S. W. 806]. We have been unable to find the language of the entire quotation in either of the cases cited by our appellate court, but the rule is in line with all the authorities and we are satisfied that it is correctly stated as quoted.

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.