## MINNEAPOLIS STEEL & MACHINERY CO. v. COUCH et al.

No. 19406. Opinion Filed May 13, 1930.

Rehearing Denied Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

A. R. Carpenter, (Keaton, Wells, Johnston & Barnes, of counsel and on the brief), for plaintiff in error.

Titus & Hill, for defendants in error.

DIFFENDAFFER, C. The parties occupy the same relation as in the trial court, and will be herein referred to as plaintiff and defendants.

This is an action brought by plaintiff upon a promissory note for $1,048, with a credit of $186.92. A copy of the note was attached to the petition which shows a provision therein as follows:

"Upon payment of this note in full in cash on or before 9-1-26, a discount of $52.40 will be allowed."

Defendants answered; admitted the execution of the note, and, in substance, alleged payment of all of said note on or prior to September 1, 1926, except the sum of $584.07, which sum they alleged they tendered to plaintiff on said date, so as to entitle them to the discount of $52.40 provided in the note.

The particular manner in which the alleged payments were made was, in sub-

stance: That, on or about May 1, 1926, they entered into a written contract with plaintiff, whereby plaintiff agreed to pay them a commission or compensation on sales of plaintiff's machinery, consisting of tractors, threshers, motor trucks, accessories, repairs, etc., and specially noted therein as tractors and accessories; that such compensation and commission was to be 20 per cent. on time sales and 20.8 per cent. on cash sales; that on or about June 7, 1926, they sold to one Randell one of plaintiff's tractors, known as "Twin City 12-30 h. p.," at plaintiff's sale price of $1,310, together with one set 6" rims at $35, making a total sale price of $1,345; that plaintiff's agent, one Ed. H. Landes, approved and witnessed the contract, and kept the original thereof; that plaintiff agreed to furnish said tractor and rims for delivery to said Randell under said contract by June 10, 1926; that, instead of delivering said tractor through defendants, plaintiff by and through its said agent, Landes, delivered the tractor and rims to said Randell, but refused to pay defendants their commission or compensation, or to allow them credit therefor upon the said note. The amount of commission claimed on said sale was $269, or 20 per cent. They further alleged that the credit of $154 shown on said note as of June 25, 1926, should have been $160, which amount they allege they paid on or about said date. Certain other small credits were claimed, whereby defendants alleged, in substance, that the amount due on the note was reduced to $636.47, including interest to September 1, 1926, which sum less the $52.40 discount provided in the note they alleged they tendered to plaintiff. They alleged subsequent credits due them sufficient, as they allege, to reduce the amount actually remaining unpaid to $570, which sum they admitted they owed and offered to pay and tendered same into court. Plaintiff replied by general denial, and specifically denied that defendants had tendered a sufficient sum to discharge said note. The issues thus joined were tried to a jury, resulting in a verdict, in effect, sustaining defendants' contention, being for plaintiff in the sum of $570. Plaintiff, after unsuccessful motion for new trial, brings this appeal.

The principal question involved is whether or not defendants were entitled to have the credit of $269 claimed by them, as a commission, or compensation for the sale of the tractor to Randell. A question also arises as to whether or not, if entitled to such credit a sufficient tender was made of the balance due to entitle defendants to the $52.40 discount provided for in the note; that there

was a written agreement between plaintiff and defendant T. R. Couch under which defendants were to sell tractors and accessories manufactured by plaintiff in the territory "tributary to Helena" is admitted. Defendant's uncontradicted evidence is, that, on or about June 7, 1926, he negotiated a sale of one of plaintiff's tractors to one F. M. Randell, who lived about four miles west of Jett, Okla., and about 8 miles north of Helena. A contract in writing to that effect was entered into and signed by Randell and Couch. It was on the regular purchaser's order form No. 506, furnished defendant by plaintiff in accordance with their agreement. It was drawn by one Ed. H. Landes and witnessed by him. He appears to have been a general sales agent of plaintiff. This contract called for the shipment of the tractor to F. M. Randell via Wichita (plaintiff's branch house), on or about June 10, 1926. This contract was taken and retained by Landes, though it was not sent into the company and approved by it. At the time it was taken, the evidence tends to show that Landes informed Randell and Couch that there were two tractors available for delivery by June 10th, one at Enid and one at Aline; that he would notify Couch the next day which tractor to get and deliver to Randell. Defendant heard nothing from Landes until the morning of June 10th, at which time Randell came prepared to take the tractor. Defendant then telephoned to Landes at Alva, where he got in communication with him about 9:30 a. m. At that time Landes informed him that he had not found a tractor to deliver. He called him again about 11:50 a. m., and he was then informed to take Randell's note for $1,000 to Jett and get the cash on it and he could get a tractor. Defendant informed Landes that he could not do this, whereupon Randell left and went to his home. Shortly after noon a Mr. Hayes, one of plaintiff's distributors located at Jett, Okla., appeared at Randell's home and closed a deal with him for a tractor under the same terms as the contract with Couch provided, viz., $160 cash, $840 due September 1, 1926, and four mules at $350. Mr. Hayes took the notes to the bank and sold them and made a "cash deal" out of it with the company. Randell testified that, between the time he closed the deal with Couch and the time the tractor was delivered to him, he had a conversation with Landes in which Landes told him that he found that Hayes had a tractor, and he, Landes, had Hayes go down and deliver the tractor. It was never shown that the company had no tractor at Enid or Aline,

that it could have delivered, or that it could not have shipped one from Wichita.

Defendant's evidence tended to show that he found a purchaser ready, able, and willing to buy the tractor at a price agreeable to the company, and had procured a contract in writing therefor on a form furnished by plaintiff, signed by the purchaser.

The agreement between plaintiff and defendant T. R. Couch, and out of which the controversy arises, is in writing and is in the record. It is too long to quote here in full. It is entitled:

"Distributor's Contract covering sale of Twin City tractors, threshers, motor trucks, accessories and repair parts, for season of 1925-1926."

A preliminary clause defines the parties, the Minneapolis Steel & Machinery Company, as the "company," and T. R.. Couch of Helena, Okla., as the "distributor."

Section 1 provides:

"Territory: That the company hereby grants unto the distributor the right to sell Twin City tractors, threshers, motor trucks, accessories and repair parts for said machinery, in the following described territory, to wit: tributary to Helena."

Section 2 provides:

"Discounts: In consideration of the fulfillment of all the terms and conditions of this agreement by the distributor on his part to be performed, the company agrees to ship to the distributor on orders accepted by the company, and in accordance with conditions hereinafter named f. o. b. the factory of the Steel & Machinery Company at Minneapolis, Minn., tractors, threshers, motor trucks, accessories and repair parts, at the company's current list prices less discounts as follows: For time sales, 20%. For cash sales 20.8%."

Section 8 provides:

"The distributor agrees that all orders for machinery resold by him under this contract, whether for cash or on time, shall be on 'purchaser's order form 506' furnished by the company."

Section 17 provides, in substance, that the title to all machinery shall remain in the company until fully paid for in cash.

Section 20 provides:

"The distributor agrees to devote the best energy and ability of his organization to further the sales of Twin City tractors, threshers, motor trucks, accessories, and repair parts, in the territory assigned to him by the terms of this contract, and further agrees to carry at least one or more Twin City tractors, threshers, or motor trucks for display purposes in his stock."

Section 22 provides:

"It is hereby understood and agreed that the distributor is not authorized or empowered to act as agent for the company, or to transact business, incur obligations, or bill goods in its name, or for its account, nor on its behalf to make any promise, warranty or representation with respect to goods, or' any other matter, except as provided for in this contract. The distributor agrees to be solely responsible for all promises made by him or by his employees, and the company is not bound by the acts or conduct of the distributor in any way, except as provided for in this contract."

And section 23, in part, provides:

"The company reserves the right to sell Twin City tractors, threshers, motor trucks, and accessories, in the territory assigned to the distributor, in which case the distributor shall receive as compensation on said sale, the amount received by the company on the sale over and above the distributor's net price, less the cost to the company of making such sale, but moneys or credits shall accrue to distributor until such machinery is fully paid for in cash; in the event that a sale in distributor's territory is made by others and not by the distributor or company, the distributor agrees that no moneys or credits shall accrue to him in connection with such sale."

Section 26 reads:

"The distributor agrees not to engage in the sale or distribution of any make of tractors or threshers or motor trucks other than the Twin City, during the life of this contract, without the written consent of the company."

There is no express provision found in the contract for the payment by plaintiff of any compensation or remuneration for his work, except as found in section 23, supra.

The distributor's remuneration for his efforts in making sales is by way of "discount," except as provided in section 23, where it is designated as "compensation."

The trial court instructed the jury, in part, as follows:

"The court instructs the jury that, in order to entitle a commission sales agent to compensation for, or commission, a sale or exchange of property, he must have been the procuring cause thereof; that is, it must have been the direct result of his exertions to bring it about; but when he is the procuring cause of the sale which has been actually made, he is always entitled to a commission or compensation, even though the sale is made by the owner directly to the purchaser without the intervention of the commission sales agent.

"Given. Excepted to by plaintiff.

"James B. Cullison, Judge.

"Gentlemen of the jury, the court instructs you that, if you find from a preponderance of the evidence in this case that sometime in the spring of 1926, plaintiff and defendant entered into a written contract of employment that, under the terms of said contract, plaintiff employed or appointed this defendant as the solicitor, distributor or agent, to sell plaintiff's tractors and other goods and wares, and you further find from the evidence that plaintiff agreed to pay this defendant a commission of a certain per cent. on all goods sold by him for the plaintiff, and you further find from the evidence that the defendant did sell a tractor and other goods to one F. M. Randell, in the amount of $1,348, as alleged in defendant's answer, in accordance with said contract of employment and at the price fixed by the plaintiff, and you further find from the evidence that plaintiff has not paid the defendant his commission earned, if you should find that the defendant has earned any commission, that then, and under these facts and circumstances the plaintiff would be liable to the defendant for the commission due and unpaid; and it would be your duty to return a verdict for the plaintiff in such a sum as you may find from the evidence plaintiff is entitled to recover from the defendant on plaintiff's promissory note sued on, less the amount due from plaintiff to defendant for commissions, on sales of plaintiff's goods, if you find the defendant is entitled to any commissions.

"Given. Excepted to by plaintiff.

"James B. Cullison, Judge."

Plaintiff complains of these instructions as error, and contends that only agents are paid commissions, and asserts that by reason of section 22, defendant Couch could not be agent of plaintiff, for the reason that said section expressly provides that the distributor is not authorized or empowered to act as agent for the company, etc. Plaintiff contends that defendant Couch was nothing more nor less than an independent dealer, buying machinery from plaintiff at an agreed discount, and reselling same, and that his compensation was such and only such a sum as he might be able to obtain for said machinery above his "net" price, and therefore he was not entitled to an allowance or credit on his note on account of the Randell transaction.

We deem it unnecessary in this case to determine whether or not the agreement was one of agency. As we view the record, the undisputed evidence shows that the sale of the tractor to Randell was made as a result of the efforts of defendant Couch; he found the purchaser, negotiated the sale, and procured a written contract with him. Plaintiff's sales agent knew of this and drew the contract and witnessed it. He informed Couch that he would notify him the next day which tractor to deliver, the one at Enid or the one at Aline. He took and retained the written contract between Randell and Couch, but failed to notify Couch which tractor to deliver. Instead of so doing, he sent another "distributor," Hayes, to Randell and delivered the tractor to Randell thus obtaining the benefit of defendant's efforts. We think in the instant case, it makes no difference whether Couch was an agent, solicitor, distributor, or independent dealer, he was entitled to remuneration for his services, and it makes no difference whether such pay be called commission, compensation, remuneration or profit.

The trial court in the instructions referred to the appointment or employment of defendant as that of solicitor, distributor or agent, and to the pay for his services as commission or compensation. These latter words seem to have been used by plaintiff interchangeably.

In section 26 of the contract, defendant's pay is referred to as "compensation." In a number of letters which it wrote to Couch before the controversy arose, it was referred to as "commission." At the trial, plaintiff's attorney, in his opening statement to the jury, said:

"The facts in this case, gentlemen of the jury, we think are about as follows:

"Sometime in the spring or early summer of 1926, Mr. T. R. Couch was appointed agent for the Minneapolis Steel & Machinery Company, with authority to sell tractors and machinery in the vicinity of Helena, Alfalfa county, Okla."

"The plaintiff, the Minneapolis Steel & Machinery Company, do sell their tractors directly to their agents or distributors at a certain price, and they sell it to their customers at a certain price and the difference between what they pay the company for the tractors and what they get for them is their commission."

Taking the contract, as a whole, and the manner in which it was evidently understood by the parties, and the evidence in the case, there was no error in the instructions.

The note in suit was given in connection with the purchase by defendant of the first tractor, presumably the one which he agreed to have in stock for display purposes. The note as heretofore pointed out provided that if this note should be paid in full on or before September 1, 1926, defendant would be entitled to a discount thereon of $52.40. The next question presented is the refusal

of the court to instruct the jury, in substance, that, in order to entitle defendants to the discount of $52.40 provided in the note, they must have paid or tendered payment in full, less any credits due defendants on or before the 1st day of September, 1926. The evidence was not clear as to whether the tender, such as was made, was made on the 1st or 2nd day of September.

Plaintiff notified defendants that the note would be sent to Helena National Bank, and that settlement could be made there. The uncontradicted evidence is that defendants made their tender at this bank on the same day that the note arrived there. Whether this was the 1st or 2nd day of September is not clear. The tender was made on the first day that it was possible for defendants to pay the note. There was no issue raised by the pleadings that the tender was not made in time. The position of plaintiff was, and is now, that the tender was insufficient in amount. The tender was not rejected upon the ground that it was not made in time, but upon the ground of its being insufficient in amount. In 38 Cyc. p. 150, the general rule is stated as follows:

"Where a tender comes too late, a refusal solely upon some collateral ground is a waiver of the objection that the tender was not made in time."

See, also, Smith v. Lobb (Cal.) 166 Pac. 1026; Murphy v. Schuster Springs Lbr. Co. (Ala.) 111 So. 427, wherein it was said:

"This doctrine is sometimes grounded on the theory that the specification of some other ground of objection furnishes sufficient evidence that the tender would have been rejected, even if made strictly in time; a situation rendering any offer unnecessary because useless."

The position of plaintiff at all times was, and is yet, that the tender if, or when, made was insufficient in amount, and the record clearly discloses that such tender, if it had been made on September 1st, would have been rejected. In Kingkade v. Plummer, 111 Okla. 197, 239 Pac. 628, it was held:

"Where a tender is necessary to the establishment of any right against another party, it is waived or becomes unnecessary when it appears that such offer, if made, would have been refused."

See, also, Rupard v. Rees, 94 Okla. 49, 220 Pac. 893. These latter cases go to the form rather than the time of the tender, but they are in line with the principle announced in Murphy v. Schuster Springs Lbr. Co., supra.

There was no error in refusing the instruction.

Plaintiff also contends that the trial court erred in refusing to instruct the jury as requested by it, in substance, that, if the jury should find that the sale of the tractor was not, in fact, made by plaintiff, but was made by another, then no money or credits were due defendants in connection with said sale, and defendants would not be entitled to the credit of $269.

The evidence, we think, conclusively shows that the sale of the tractor to Randell was made as a direct result of defendants' efforts and negotiations. That but for his work, no sale would have been made, and that after defendant Couch had procured a valid contract in writing from Randell, plaintiff's agent took and retained the contract, and failed, without excuse, to inform defendant which tractor to deliver, the one at Enid or the one at Aline, but thereafter sent Hayes to Randell and closed the deal for the tractor. There was no evidence that the sale was made by any other person. There was no error in refusing the instruction.

Plaintiff complains because the court refused to permit it to introduce in evidence a similar contract which it had with Hayes, covering the territory of "Jett, Okla.," and vicinity, for the purpose, as we gather from the brief, of showing that Randell did not live within the territory covered by defendants' contract, but did live within the territory covered by the Hayes' contract, and that therefore defendant had gone beyond his territory in making the sale to Randell, and had not procured the written consent of the company so to do.

We think the court was entirely correct in its ruling. As heretofore stated, the contract of defendants covered the territory "tributary to Helena." The trial court held that there was no way to determine the limit of defendants' territory. There was at best no evidence that Randell did not live in territory "tributary to Helena."

Aside from this, the record shows clearly that plaintiff, through its sales agent, Landes, knew where Randell lived; that he went with Couch to Randell's home, and, in fact, drew the contract of sale between Couch and Randell, and the company took the said contract, acted upon it, and received the benefits thereof.

Plaintiff should not, under such circumstances, be heard to complain, because defendant had gone out of his territory if such were the fact.

The same principle would apply to plain-

tiff's contention that defendant breached his contract by not keeping and having on stock a tractor for display purposes. Plaintiff certainly knew this when its sales agent drew the contract and accepted the benefits of defendants' efforts in finding a purchaser for the tractor.

A careful examination of the entire record does not disclose any substantial error, and the judgment should be affirmed.

BENNETT, EAGLETON, HERR, and HALL, Commissioners, concur. CULLISON, J., disqualified and not participating.

By the Court: It is so ordered.