[Civ. No. 16239.   Second Dist., Div. Three.   Nov. 1, 1948.]

E. N. CHAMBERLAIN, Respondent, v. C. T. ABELES, JR., et al., Appellants.

Hallack W. Hoag for Appellants.

John Ruskin Lane for Respondent.

VALLÉE, J.—Defendants appeal from a judgment in favor of plaintiff in the sum of $5,500, and costs, in an action brought by plaintiff for the breach of an oral contract by which defendants agreed to pay plaintiff a commission of 5 per cent of the net sales derived by defendants from all orders and manufacturing contracts procured by plaintiff for defendants from the Cannon Electrical Development Company.

The amended complaint, among other things, alleged that on or about April 1, 1943, it was orally agreed between plaintiff and defendants that in addition to performing his regular duties as office manager, plaintiff would use his time and efforts and business contacts to procure orders and manufacturing contracts for defendants from Cannon Electrical Development Company; that as compensation for such extra work and services by plaintiff, defendants would pay to plaintiff, over and above his salary, a commission of 5 per cent of the net sales derived by defendants from all orders or contracts obtained from the Cannon Electrical Development Company, which commissions were to be paid after the amount of such net sales had been from time to time determined; that pursuant to said agreement plaintiff, between April 1, 1943, and December 1, 1943, obtained orders and manufacturing contracts from the Cannon Electrical Development Company in excess

of $115,000; that under the terms of the agreement plaintiff fully performed everything on his part to be performed; that under the agreement, and between April 1st and December 1, 1943, there accrued to plaintiff the sum of $5,750, representing commissions on said sales to Cannon Electrical Development Company; that plaintiff left defendants' employ on December 1, 1943, and that further commissions have accrued to plaintiff under the terms of the agreement; that plaintiff demanded payment of his commissions from defendants but that they have at all times failed and refused to pay the same.

Defendants' answer contained a general denial and, in addition, two affirmative defenses: (1) that plaintiff had been paid for all services rendered by him up to the date of his termination of employment on December 1, 1943, and by so accepting the amount in full and complete settlement was estopped to claim any further sum; (2) that plaintiff, by accepting the sums paid him during his employment as full and complete settlement of the obligations of the defendants, waived any right to claim further compensation.

The court found: that defendants were copartners doing business under the fictitious firm name of The Rumsen Co.; that defendant Abeles, Jr., acted as the authorized agent and representative of the copartnership in the general management and conduct of the business transacted by the copartnership; that for many years prior to the time alleged in the amended complaint plaintiff had enjoyed extensive business contacts and associations in the industrial and manufacturing field in and about Los Angeles County and had built up an extensive good will among various firms and industries in and about that locality; that from March 1, 1943, to and including November 30, 1943, plaintiff had been employed by defendants as general office manager of the defendant, The Rumsen Co.; that on or about March 20, 1943, it was mutually agreed by oral agreement between plaintiff and the defendants, that plaintiff, in addition to performing his regular duties as office manager of defendant, The Rumsen Co., would "use his time, efforts and business contacts in an effort to procure for defendants orders and manufacturing contracts from the Cannon Electrical Development Company and the Cannon Manufacturing Corporation," and that defendants, in payment for such extra work and services by plaintiff, would pay to plaintiff, "over and above his regular salary, a commission of five per cent (5%) of the net sales made by defendants to said companies on orders

or contracts obtained by defendants from said companies"; that pursuant to the agreement plaintiff "used his time, efforts and business contacts in procuring orders and manufacturing contracts from the Cannon Electrical Development Company and the Cannon Manufacturing Corporation for defendants and by his efforts did procure orders and manufacturing contracts for defendants from said companies which resulted in net sales by defendants to said companies in the amount of One Hundred Ten Thousand Dollars ($110,-000.00)"; that there was due and owing to plaintiff from defendants the sum of $5,500 "commissions on the said net sales by defendants to said companies." Judgment followed accordingly, from which defendants have appealed.

Appellants first contend that there is no substantial evidence to support the finding that plaintiff by his efforts procured orders and manufacturing contracts for defendants from Cannon Electrical Development Company and the Cannon Manufacturing Corporation (hereafter referred to as "Cannon Company"), which resulted in net sales by the defendants to said companies in the amount of $110,000, assuming the parties entered into an oral contract upon the terms found by the trial court. No objection is made to the sufficiency of the evidence to support the other findings.

Plaintiff's right to a commission is dependent entirely upon the terms of the agreement between the parties and the nature of the services required to be rendered by him. The agreement contemplated that plaintiff was to use his time, efforts and business contacts in an effort to procure orders from the Cannon Company, for which services he was to receive a commission upon the net sales from said orders. Although the specified result contemplated by the agreement was accomplished, namely, the obtaining of the orders from the Cannon Company, in order to recover his commission it was incumbent upon plaintiff to produce evidence showing that he was the "effective" or "procuring" cause of the sales.

The principle is stated in the Restatement as follows: "An agent whose compensation is conditional upon his accomplishment of a specified result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result. . . . An agent is an 'effective cause,' as that phrase is used in this Section, when his efforts have been sufficiently important in achieving a result for the accomplishment of which the principal has promised to pay him so that it is just that the principal should pay the promised

compensation to him." (Rest., Agency, § 448, com. a.) (See, also, 2 Am.Jur. § 301, p. 236.) While the most common type of case to which this rule has been applied is that of a real estate broker or agent (*Sessions* v. *Pacific Improvement Co.,* 57 Cal.App. 1 [206 P. 653]; *Pryor* v. *McGuire,* 59 Cal.App. 234 [210 P. 532]; *Bail* v. *Glantz,* 78 Cal.App. 49 [248 P. 258]), the principle has been applied in other agency situations. (See *Zinn* v. *Ex-Cello-O-Corp.,* 24 Cal.2d 290 [149 P.2d 177] [action to recover merchandise sales commission]; *Washburn* v. *Speer,* 206 Cal. 414, 420 [274 P. 519] [action to recover merchandise sales commission]; *Brea* v. *McGlashan,* 3 Cal.App.2d 454 [39 P.2d 877] [action to recover commission upon obtaining radio advertising contracts]; *Lichtig & Rothwell, Inc.* v. *Holubar,* 78 Cal.App. 511 [248 P. 735] [action to recover commission for procuring professional engagement of an actress].)

The expression "procuring and inducing cause" is defined in *Sessions* v. *Pacific Improvement Co.,* 57 Cal.App. 1, 17 [206 P. 653], as "the cause originating from a series of events that, without break in their continuity, result in the prime object of the employment of the agent." In *Brea* v. *McGlashan, supra,* 3 Cal.App.2d 454, the court, in determining whether the finding that plaintiff was the procuring cause of obtaining certain radio advertising contracts was sustained by the evidence, said (p. 465): "The word 'procure' does not necessarily imply the formal consummation of an agreement. The Century Dictionary gives the following as the meanings of the word: ' "To bring about by care and pains; effect; contrive and effect; induce; cause, as he procured a law to be passed." ' In its broadest sense, the word means to prevail upon, induce or persuade a person to do something. . . . The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause. (*Sessions* v. *Pacific Improvement Co.,* 57 Cal.App. 1 [206 P. 653].) And where the evidence is conflicting, the conclusion as to the procuring cause is one for the trial court and will not be disturbed on appeal. (*Jones* v. *Foster,* 116 Cal.App. 102, 108 [2 P.2d 582].)" ▮ Where the agent is the procuring cause of the transaction which he was authorized to negotiate "he is entitled to his commission irrespective of the fact that the principal himself, or through others, may have intervened and actually completed the final act of the negotiation. Accordingly an agent who was the procuring cause of the transaction is entitled to his commission irrespective of the

fact that it was consummated by the principal, that he was not personally present when it was entered into, that it was consummated without his knowledge, or that he did not personally see or talk to the other party entering into the transaction.'' (3 C.J.S. § 185, p. 85.) (See: *Washburn* v. *Speer,* 206 Cal. 414 [274 P. 519]; *Brea* v. *McGlashan,* 3 Cal.App.2d 454 [39 P.2d 877]; *Buhrmester* v. *Independent Plumbing & Heating Supply Co.,* (Mo.App.) 151 S.W.2d 509; *Gould* v. *Ricard Boiler etc. Co.,* 136 Ill.App. 322; *Vining* v. *Lippincott,* (Mo.App.) 182 S.W. 758; *Minneapolis Steel & Machinery Co.* v. *Couch,* 144 Okla. 259 [291 P. 74]; *Gemunder* v. *Houser,* 7 Misc. 487 [27 N.Y.S. 977], affirming 6 Misc. 210 [26 N.Y.S. 529].)

The question of whether an agent is the procuring cause of a sale is a question for the trier of fact. Where the evidence is conflicting the finding as to the procuring cause will not be disturbed on appeal. (*Brea* v. *McGlashan,* 3 Cal. App.2d 454, 465 [39 P.2d 877].)

With the foregoing principles in mind, and accepting as true all evidence tending to establish the correctness of the findings, together with every inference favorable to plaintiff which may be drawn therefrom, and excluding all evidence in conflict therewith, the record reveals the following activities on the part of plaintiff in his effort to procure for defendants orders from the Cannon Company. Sometime between the middle and the latter part of March, 1943, plaintiff suggested to defendant Abeles that since he had a contact at the Cannon Company which he thought was usable he should call upon the Cannon Company ''in an effort to secure business for the Rumsen Company, which needed it.'' Abeles authorized plaintiff to do so and stated that if plaintiff succeeded in getting any business ''a commission of five per cent would be paid for that kind of work.'' The commission was to apply so far as plaintiff knew ''on any order received from this one particular company in response to the effort I was making on it.'' Plaintiff immediately contacted Mr. Bixler of the Cannon Company, a former business associate of his, who arranged for a meeting to be held ''a few days later'' between Mr. Rowen, purchasing agent of the Cannon Company, and plaintiff. Plaintiff testified that at this meeting Mr. Rowen asked him ''questions about the product that the Rumsen Company was making and indicated that he had no use for this type of contact nut for electrical connectors. Mr. Rowen indicated to me he had no use for this type of nut and he

mentioned the assembly ring they were using; he inquired what our price would be in making the contact nut and if it could be adopted in making this particular assembly ring. I replied that I did not know, that it was a little different and I would find out. . . . I returned to the office and talked with Mr. Levingston, one of the partners, and Mr. Abeles indicated the Rumsen Company might be desirous of making this particular ring for the Cannon Company and thought there would be very good business for us if the company could do it. Mr. Abeles indicated he would like to have me go over and find out whether they could be manufactured properly and if we could make the product exclusive for the Cannon Company." The Rumsen Co. was not making this particular assembly ring at the time. Plaintiff then testified that he undertook the project. He contacted an engineer friend of his whom he had known for many years and during evenings, Saturdays, and Sundays worked out the process and the type of material necessary to make the product that would interest the Cannon Company. In connection with this activity plaintiff testified that he and his engineering friend "worked out the design; what type of sheet metal we would use in the construction of it; what type of die we would use, how many dies we would have to have; what the net result would be; what the tolerances were that we would have to allow; what kind of metal; what designs would meet the Cannon Company ideas; in other words, the whole detail was worked out, and the various people to do the job. It took a lot of time . . . I imagine the biggest part of a month, or longer, before all the 'bugs' were worked out." The record reveals that there were numerous meetings between Mr. Rowen and other representatives of the Cannon Company and defendant Abeles, at some of which plaintiff was present. Plaintiff testified that on one of these occasions "We presented to Cannon's a schematic presentation of what could be done; in other words, by using these different processes, the nut could be made into the assembly ring. This was a paper process, and we suggested that they let us run a pilot run in one size and ascertain whether or [not] they would actually work the way it looked like they would on paper." This pilot run was made and thereafter the Cannon people ordered the assembly ring and subsequently reordered. Plaintiff further testified that Mr. Abeles did not "know the prices" or "the costs" and that he collected all of the information on prices of material and labor costs and that, although the correspondence between the defendants and

the Cannon Company was signed by Mr. Abeles, he supplied the information which became the text of Abeles' letters. In effect this testimony was corroborated by the testimony of Miss Borror, a former employee of the defendants, who stated that "Any time I would go talk with Mr. Abeles regarding the Cannon order, he would refer [me] to Mr. Chamberlain, telling me Mr. Chamberlain was completely familiar with all of the Cannon Work."

Appellants make much of the fact that defendant Abeles and Mr. Rowen both testified that it was Abeles, and not plaintiff, who "obtained" the contracts. Mr. Rowen's testimony reveals that his first contact with defendant Abeles and plaintiff was at the time Mr. Bixler introduced them to him; that his purchases from The Rumsen Co. were based purely on the need for the article defendants could supply; and that there was no personal reason why it should have been Mr. Abeles or plaintiff from whom he purchased.

The foregoing testimony of plaintiff's activities constituted ample evidence from which the trial court was justified in believing that it was plaintiff's activities that "set in motion a series of events which, without break in their continuity" brought about the sales in question. Any conflicts in the evidence respecting plaintiff's activities were questions for the trier of fact and its conclusion will not be disturbed on appeal.

Appellants next assert that the court erred in not making findings on their affirmative defenses of waiver and estoppel. The principles governing the duty on the part of the court with respect to the necessity of making findings, is succinctly stated in *Petersen* v. *Murphy,* 59 Cal.App.2d 528, 532 [139 P.2d 49], as follows: "It is well established that unless waived full findings are required on all material issues raised by the pleadings and evidence in a case (24 Cal.Jur. 935-936); that where a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground for granting a new trial *provided* it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the complaining party if the omitted findings might have the effect of countervailing or destroying the effect of the other findings (24 Cal.Jur. 940-941; *Powell* v. *Johnson,* 50 Cal.App.2d 680, 683 [123 P.2d 875]; *Wilcox* v. *West,* 45 Cal.App.2d 267 [114 P.2d 39]).

"But it is equally well established that the findings of a court are to receive such a construction as will uphold

rather than defeat its judgment thereon (*Breeze* v. *Brooks*, 97 Cal. 72, 77 [31 P. 742, 22 L.R.A. 256]), and are to be read and considered together and liberally construed in support of the judgment (*Menghetti* v. *Dillon*, 10 Cal.2d 470, 472 [75 P.2d 596]; *Cornell* v. *Hollywood Turf Club*, 32 Cal.App.2d 204, 208 [89 P.2d 449]); and that if findings are made upon issues which determine a cause, other issues become immaterial and a failure to find thereon does not constitute prejudicial error (24 Cal.Jur. 947; *Merrill* v. *Gordon & Harrison*, 208 Cal. 1, 6 [279 P. 996])." ▆▆▆ It is likewise the rule that where a finding, if made, would necessarily have been against the appellant, he cannot complain of the lack of such finding. (*Petersen* v. *Murphy*, 59 Cal.App.2d 528, 535 [139 P.2d 49]; *Moore* v. *Hoar*, 27 Cal.App.2d 269 [81 P.2d 226]; *Consolidated Irrigation District* v. *Crawshaw*, 130 Cal.App. 455, 462 [20 P.2d 119]; *Brooks* v. *Bailey*, 40 Cal.App.2d 310, 316 [104 P.2d 854]; 24 Cal.Jur. 944.)

Appellants' assertion that they presented sufficient evidence in support of the affirmative defenses is unfounded. Defendant Abeles testified that plaintiff had been hired as office manager at a salary of $75 per week and that subsequently his salary was raised to $100 per week. He testified emphatically that plaintiff never made any additional claim for obtaining the Cannon business or claimed that he had any agreement for a commission on the Cannon business.

▆▆▆ The trial court found that there were two separate employments,—one as office manager, and the other a special employment by virtue of the oral agreement entered into between the parties. Under these circumstances, evidence of the acceptance by plaintiff of his regular paycheck as office manager could in no way be construed as payment in full of plaintiff's commissions nor a waiver of his claim to commissions under the oral agreement. In order to necessitate a finding on the issues of estoppel or waiver, substantial evidence of acts or conduct on the part of plaintiff, other than the acceptance of his regular paychecks, must appear. Since the record is devoid of any such evidence, findings on these issues were not required.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 30, 1948.