[Civ. No. 6723. First Appellate District, Division One.—August 27, 1929.]

WELDON C. LARRABEE, Respondent, v. REPUBLIC BOND & MORTGAGE COMPANY (a Corporation), Appellant.

Fickeisen & Richardson and J. E. Haley for Appellant.

Loewenthal, Collins & Loewenthal, Loewenthal, Lissner, Roth & Gunter and Julius Mackson for Respondent.

KNIGHT, J. — The respondent Weldon C. Larrabee brought this action against the Republic Bond & Mortgage Company, a corporation, and D. Binkhorst, its president, to collect $2,000 claimed to be due as commissions for the sale of the corporation's capital stock. The trial court granted a nonsuit in favor of Binkhorst upon the ground that respondent's contract of employment was with the corporation alone, and at the conclusion of the trial entered judgment against the corporation for the amount of said commissions less the sum of $450 theretofore advanced to respondent under the terms of his contract, from which judgment the corporation appeals.

The corporation now contends that respondent's contract of employment was with Binkhorst, and that consequently the corporation was not liable for the payment of said commissions. There is no merit whatever in the contention. The evidence shows that said corporation was about to enter upon a stock-selling campaign and in furtherance thereof had obtained from the corporation commissioner a permit to sell a certain number of shares of its capital stock and to pay a selling commission of not exceeding twenty per cent of the par value of the stock sold. Thereupon the directors of said corporation, by resolution, directed its vice-president and secretary to enter into a written contract with Binkhorst to ''supervise the sale'' of said stock for a commission ''of 20% of the selling price thereof as authorized by said permit'' and granting him power ''to appoint and employ *for said corporation and in its name* competent salesmen. . . . '' (Italics ours.) On January 24, 1924, a contract to that effect was executed whereby Binkhorst was employed as ''fiscal agent . . . to supervise and conduct the sale'' of said stock, with power ''to appoint and employ sub-agents and to fix the amount of their remuneration upon the condition that the entire cost to the company of selling a unit of said stock shall not exceed twenty per cent (20%) of the selling price thereof.'' Acting pursuant to the authority thus granted Binkhorst entered into a written contract with respondent whereby the latter was employed as ''sales manager'' to carry on the sale of said stock. Such contract was in the form of a letter addressed to respondent, signed by Binkhorst, and written from the corporation's offices on

one of its letter-heads setting forth the name of the corporation and the names of its officers, including the name "D. Binkhorst, President." The letter contained the terms and conditions of the employment, and read in part as follows: "This is to state that after our several interviews we have appointed you a Sales Manager for the sale of our capital stock as authorized under the permit issued by the Corporation Securities Commissioner, copy of which is attached hereto. The writer hereby appoints you as Sales Manager by virtue and under the contract with the corporation dated January 24, 1924. You are to provide salesmen to sell this security and pay them a commission of 10%. You are to increase this sales force and create an adequate sales organization as the conditions will warrant. You are to receive an overriding commission of 2% on all sales made by the corporation while and during the time you are its Sales Manager for the sale of its capital stock, except such sales which have been partially closed and committed from the directors of this corporation . . . " Furthermore, it was agreed to furnish respondent with offices, office equipment, stenographic work, telephone bills, and all expenses incident to such overhead and also to pay him $75 a week "as an advance" on his commissions. The letter further provided as follows: "You are to co-operate with us in the method of advertising . . . and in all matters of importance in your sales campaign you are to counsel and directly deal with the President and Board of Directors of the Republic Bond & Mortgage Company"; and then, after setting forth other matters relating to the employment, but which are not pertinent here, the letter concluded as follows: "As we are compelled technically to work under the contract made by me with the corporation under date of January 24, 1924, I agree within a period of 90 days, if it will serve our purposes best, to have the corporation execute a contract direct with you or have a more definite contract executed with you under this agreement of January 24 with myself and the assistance of our attorneys for the corporation. With the understanding that a more permanent and definite contract shall be executed between ourselves and the corporation at a later date, and by signing your name in acceptance hereto, the foregoing is considered to be a contract between us and expresses clearly your authority to proceed as Sales Manager

for the sale of the securities of the Republic Bond and Mortgage Company under the customary reasonable and co-operative methods usually employed in executing the duties of Sales Manager." Attached to the letter was the written acceptance of respondent and Binkhorst.

Thereafter and in accordance with the terms of said contract the corporation furnished respondent with offices which were part of the general offices of the corporation, supplied him with business cards representing him to be its sales manager, and with letters of introduction to several directors of said corporation, written on the corporation's letter-heads and signed "Republic Bond and Mortgage Company, D. Binkhorst, President," in which it was stated in part: "This will introduce to you Mr. Weldon Carey Larrabee whom we have engaged as sales manager in the department created for selling our capital stock." The corporation also paid respondent the weekly installments of $75 each mentioned in the contract by the checks drawn upon its funds; and, furthermore, the evidence shows that the entire proceeds derived from the sale of the capital stock were retained by the corporation and paid into one account. The twenty per cent allowance for commissions for the sale of the stock was not segregated. A "fiscal agent" account was carried on the books of the corporation to which money was transferred at irregular times from the general funds of the corporation; but the funds so deposited in the "fiscal agent" account were used generally to defray the operating expenses of the corporation and to meet the expenses of the sale of said stock. Binkhorst drew no salary from the corporation, nor was he paid any commissions on stock sales, but he drew various sums from the "fiscal agent" account from time to time as his circumstances required.

We think it evident without discussion that the foregoing facts are amply sufficient to sustain the trial court's conclusion that the corporation and not Binkhorst was the real party to the contract of employment, and that Binkhorst acted in the matter merely on behalf of the corporation and as its president in carrying out the directions of the board of directors set forth in its resolution, and that consequently the corporation was liable for the payment of respondent's commissions. It may be fairly inferred, as

indicated by the trial court in granting the nonsuit, that the reason why the corporation did not contract directly with respondent for the employment of his services was to avoid any technical violation of the corporation commissioner's permit limiting the commission on stock sales to twenty per cent of the par value of the stock sold.

Appellant further contends that in any event respondent is not entitled to the commissions sued for because, as it claims, he abandoned his employment prior to the consummation of the particular sale out of which the present demand for commissions arises. This contention is equally without merit. The contract of employment contained the following provision: "I (Binkhorst) will cooperate with you in trading your securities and assist in absorbing the losses on account of such exchanges, and as president of the Republic Bond & Mortgage Company I pledge that the officers and directors of this corporation will assist you to a reasonable degree in the endeavors of your sales campaign." The evidence shows that prior to the date of the alleged termination of respondent's services one of the salesmen employed by him pursuant to the terms of his contract procured a prospective purchaser named Foreman who was desirous of investing $100,000 in said stock under certain conditions, and that after conferring with Foreman respondent, accompanied by the salesman, introduced Foreman to Binkhorst; that upon being informed of the conditions under which Foreman was willing to invest the amount mentioned Binkhorst told respondent that the transaction was an unusual one and could be handled only by himself as president of the corporation. Thereafter Binkhorst closed the transaction with Foreman for the sale of stock of the par value of $100,000. Under such circumstances respondent was clearly entitled to a commission on said sale even though, as appellant claims, respondent's services ended prior to the date of the consummation of the Foreman sale, because it is well settled that if after a broker initiates the negotiations the seller takes the matter into his own hands and completes the sale on his own terms, the broker is so completely discharged from responsibility in the premises that the seller is estopped to contend against the broker's claim for commissions that the broker has not produced a purchaser who is ready, able and willing to make the purchase (*Constant*

v. *Wallace*, 62 Cal. App. 768 [217 Pac. 1081]; *Bail* ·v. *Glantz*, 78 Cal. App. 49 [248 Pac. 258]).

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.