[Civ. No. 10529.   Third Dist.   June 7, 1963.]

LESLIE H. MILLER, Plaintiff and Respondent, v. DONALD WEBB, Defendant and Appellant.

Donald Webb, in pro. per., for Defendant and Appellant.

White, Harber, Fort & Schei and Lawrence A. Schei for Plaintiff and Respondent.

PIERCE, P. J.—This is an appeal from a judgment against defendant-appellant, Webb, (1) in the amount of $9,009.45, plus $953.93 interest for commissions owed to respondent, Miller, for his services in connection with certain sales of real estate; (2) for repossession of certain personal property.

The complaint here alleged that defendant and plaintiff, both licensed California real estate brokers, entered into an oral contract under which defendant hired plaintiff to solicit

and obtain "listings," i.e., authorizations by owners engaging defendant to find purchasers of their real estate. It also alleged that, under the contract, plaintiff was employed to find purchasers of such listed real estate. As consideration for his services, plaintiff was to share in commissions received by defendant as follows: 20 per cent thereof on sales where the listings were obtained by plaintiff and an additional 30 per cent thereof on sales where plaintiff produced the ultimate purchaser. The complaint further alleged that plaintiff had entered into this employment, had obtained various listings, had produced various purchasers during the period of his employment, which had been terminated by defendant on December 14, 1959, that sales had resulted from these listings and purchasers had been produced from which defendant had received commissions, but that he had refused to pay to plaintiff his share of the commissions on certain of these sales.

A second count of the complaint alleged that plaintiff had loaned defendant a certain Todd checkwriter which defendant refused to return. Plaintiff prayed for its delivery.

Defendant's answer admitted the employment and, with two important exceptions, admitted that the terms of employment were as alleged in the complaint. The exceptions were: (1) that it was the understanding of the parties that the 20 per cent share in commissions would not apply to any sale of property "listed" through plaintiff's efforts if the sale occurred after termination of plaintiff's employment; (2) that plaintiff was not to receive 30 per cent of commissions on sales for purchasers who were merely "produced," but only if plaintiff both produced the purchaser and actually consummated the sale himself. The answer further alleged that under the contract, thus construed, defendant owed plaintiff nothing for commissions but, on the contrary, plaintiff was indebted to defendant for advances made exceeding commissions earned. Return of these advances was prayed for in a cross-complaint.

As to the checkwriter, defendant alleged that this had been pledged by plaintiff to secure the moneys advanced to him by defendant.

These were the sole issues raised by the pleadings; they were the sole issues mentioned in defendant's statement adopted by the trial court on pretrial. They were the issues on which the case was tried.

After trial the court made its findings. It found, contrary to the contentions of defendant, that there had been no under-

standing that plaintiff's right to 20 per cent of commissions was to terminate if the sale was consummated after termination of his employment. And, with reference to the additional 30 per cent, it found the agreement provided for payment to plaintiff of this commission "where the ultimate purchaser was produced or procured by plaintiff." So construing the contract, the court went on to find that plaintiff had furnished listings and produced or procured ultimate purchasers with respect to properties, sales of which had been consummated and on which defendant had been paid commissions, as the result of which defendant owed plaintiff (after certain offsets) a net of $9,009.45 with interest. Judgment was entered accordingly.

The court also found that there had been no pledge of the checkwriter and defendant was ordered to return it to plaintiff.

■ Defendant, who at the trial and in all proceedings before the trial court was represented by counsel, now appeals in propria personam. Upon appeal he urges many matters which not only were not raised in the trial court but which could not have been raised there since they were not within the pleaded issues. Therefore we cannot and do not notice them here. (*Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780]; *Perry* v. *Thrifty Drug Co.,* 186 Cal.App.2d 410 [9 Cal.Rptr. 50]; *Douglas* v. *Southern Pacific Co.,* 203 Cal. 390 [264 P. 237]; 3 Cal.Jur.2d 604, and cases cited.)

■ The contention on appeal that the court's findings are unsupported by substantial evidence is also unsustainable. The transcript is principally a recital by two witnesses, defendant and plaintiff, each giving conflicting accounts of what was said in the conversation between them (during which no one else was present) when the oral contract was entered into, and what was done thereafter in its performance. Defendant produced no one else as a witness. One of the purchasers, and the agent of another (this agent who had acted for an undisclosed principal), testified for plaintiff. Both fully corroborated his testimony showing he had "produced or procured" these purchasers.

It is evident that the trial court believed plaintiff; did not believe defendant. ■ We are not empowered to reweigh the evidence. ■ But if we were, our reading of the record convinces us it strongly preponderates to prove plaintiff's case. Two principal sales were involved, one of a property known as the Fremont Motel, the other, the Spanish Villa

Motel. On both of these plaintiff obtained listings; on both he produced purchasers ready, willing and able to buy (and who did buy) and showed them the property. With reference to the Fremont Motel plaintiff showed the ultimate purchaser, Kemp, the motel in the first part of December 1959, a counteroffer was made within a very few days, it was met by the seller, and the contract of purchase and sale was signed soon thereafter for a purchase price of $160,000. On this sale defendant, on January 4, 1960, received a commission of $12,160. Defendant himself described this transaction as being a "once in a million deal" and it is strongly inferable from the evidence that defendant, having sensed from the beginning that it would be, took the deal over from plaintiff, excluded him from further negotiations, withheld information from him regarding the deal's progress and just prior to the sale's closing discharged plaintiff from his employ in an attempt to avoid having to share the commission with him. It is unnecessary further to detail the evidence either regarding this or the other sales. This evidence fully supported the trial court's findings.

■ There is no rule of law supporting the proposition for which defendant seems to contend that an agreement will be implied against plaintiff's right to share in commissions after termination of his employment.

There was substantial evidence that plaintiff was the procuring cause of the sales. ■ The word "procure" does not necessarily imply the formal consummation of an agreement. It is said in *Willson* v. *Turner Resilient Floors, Inc.,* 89 Cal. App.2d 589 [201 P.2d 406], at page 595:

". . . In its broadest sense, the word means to prevail upon, induce or persuade a person to do something. . . . The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause. [Citing case.] ■ And where the evidence is conflicting, the conclusion as to the procuring cause is one for the trial court and will not be disturbed on appeal. [Citing case.] ■ Where the agent is the procuring cause of the transaction which he was authorized to negotiate 'he is entitled to his commission irrespective of the fact that the principal himself, or through others, may have intervened and actually completed the final act of the negotiation.' " (See also: *Chamberlain* v. *Abeles,* 88 Cal.App.2d 291 [198 P.2d 927] ; *Larrabee* v. *Republic Bond & Mtge. Co.,* 100 Cal.App. 447 [280 P. 149] ; *Inglis* v. *Humphries,* 180 Cal.App.2d Supp. 928 [4 Cal.Rptr. 838].)

Defendant made a motion for new trial after the judgment of the trial court. It was predicated upon "accident," "surprise" and "newly-discovered evidence," to wit: that of one Vernon C. Reed, who had been defendant's Sacramento office manager at the time of these transactions. It appeared from defendant's affidavit—but not from any affidavit of Reed himself—that Reed, if called, would have corroborated a conversation on December 8, 1959, testified to by defendant in which plaintiff had admitted he was no longer employed by defendant and that defendant was not indebted to him for previous services. By counteraffidavit it appeared that Reed had continued to work for defendant for four months after this action had been filed (during which period his deposition could have been taken), that at and before the trial he was living in Lincoln, Nebraska, at an address with a telephone, a fact which plaintiff had readily ascertained in preparation for trial, and which information was equally available to defendant.

Under these circumstances, there was no abuse of discretion in the denial by the trial court of the motion for a new trial.

The judgment is affirmed.

Schottky, J., and Friedman, J., concurred.